Charles H. CROCKETT et al., Appellants,

v.

Granvel O. SMITH, Appellee.

No. 641.

Court of Civil Appeals of Texas, Tyler.

Aug. 31, 1972.

Rehearings Denied Oct. 5, 1972.

Palmer & Palmer, Matthew A. Rosenstein, Dallas, for appellants Charles H. Crockett and Larry S. Parnass.

Zimmerman, Minick & Zimmerman, W. Ted Minick, Dallas, for appellant Louis Blaylock, Jr.

Collie, McSpedden & Roberts, Waller M. Collie, Jr., Dallas, for appellee.

DUNAGAN, Chief Justice.

This is a suit brought by appellee seeking damages for an alleged breach of an

agreement by appellants to sell appellee one-fourth of the total shares owned and to be acquired by appellants in the Irving Savings and Loan Association, and in the alternative, for damages arising from a breach of trust on the part of appellants and exemplary damages based thereon. The jury in response to special issues found for appellee, both on the making of the contract and the alleged breach of trust, and awarded exemplary damages in the amount of $25,000.00. Appellee thereupon moved for judgment on the jury verdict and appellants moved for judgment non obstante veredicto. The trial court partially granted appellants' motion for judgment non obstante and partially granted appellee's motion for judgment, resulting in a judgment for appellee only on the jury findings of breach of trust and exemplary damages, thereby denying appellee recovery on the alleged breach of contract. Appellee duly perfected an appeal as to the granting of the judgment non obstante which action is covered under a separate appeal, and the opinion of this court was delivered August 3, 1972, in Tex.Civ.App., 485 S.W.2d 317. This is an appeal by appellants from that portion of the judgment granting damages for the alleged breach of trust and exemplary damages for the sum of $25,000.00.

By way of appeal appellants Crockett and Parnass bring five points complaining of the action of the trial court in awarding damages for the breach of trust and exemplary damages, while appellant Blaylock brings twenty-one points complaining of the same action of the trial court by its judgment.

The relevant facts are these. At the time appellee accepted employment with Irving Savings and Loan the only substantial block of shares not owned by appellants was owned by Audrey Roberts or entities controlled by him. Roberts was unwilling to sell such stock to the appellants. After Roberts died, appellee commenced negotiations with his widow and eventually entered into a written agreement with her for the purchase of the Roberts' stock. The consideration to be paid for the first block of Roberts' stock was borrowed by appellee and the appellants Crockett, Parnass and Blaylock, Jr. from the Continental National Bank in Fort Worth, and such borrowing was reflected in a Promissory Note for $302,625 executed by appellee and appellants.

At or about the time of this transaction, appellee made known to appellants that he wished to exercise his option to acquire one-fourth of the total shares then owned and being acquired by them. A dispute arose concerning appellee's claim, and the 809 shares then being acquired were purchased in the name of Louis Blaylock, Jr., Trustee, and the stock was pledged to the bank by him as Trustee. The shares remained in the name of Blaylock, Trustee, until after appellee was discharged from his employment.

Shortly before the Roberts' transaction, appellee was informed by Parnass that certain third parties were interested in acquiring the association and that shares of stock of the association were to be offered to them at $585 per share. These prospective buyers made a counter offer of $485 per share, and thereafter appellants countered with another offer of $550 per share. This was not accepted by the prospective purchasers, and negotiations broke off.

During the course of the above negotiations, appellee reiterated his demands that he be allowed to acquire the twenty-five percent interest under the agreement which he claimed to have been made. The appellants denied he had any such right but offered to sell him all of the shares of the corporation under a proposed written agreement. When appellee did not accept this offer, his employment was terminated February 1, 1969. After he left, appellee never received any shares of the association or any money therefor.

In April of 1969, appellants Parnass and Blaylock, Jr. and Sr. joined together to sell control of the savings and loan association.

They received a price of $550 per share for so much of their stock as equaled 51% 2059.6 shares). This is the price appellee contends is fair market value, and the sum upon which the judgment is based.

The alleged conversion involved took place during the sale of control in the following manner:

Before the sale of control, Blaylock Sr. owned 333 shares; Blaylock, Jr. 453.6 shares and Parnass held 786.7, all in addition to the 809 share certificate held by Blaylock, Jr. in escrow. All of these certificates were presented for transfer, with Blaylock, Jr. receiving back 161.5 shares while Parnass got back 161.2 shares. Although they retained more than the 225.5 shares claimed by appellee Smith, the escrow was not re-established nor the 225.5 shares in issue delivered to Smith.

Appellants by their points of error collectively complain in general, (1) that the evidence is legally insufficient to show that appellant Blaylock occupied the status of trustee, (2) of the submission and affirmative jury finding as to the valuation of the stock on date of conversion, (3) of the finding and awarding of punitive damages, and (4) of several evidentiary matters.

■ Under the no evidence points, we disregard all adverse evidence and give credit to all evidence that is favorable to the successful party, and indulge every reasonable conclusion favorable to appellee. Owens v. Rogers, 446 S.W.2d 865 (Tex. Sup., 1969); Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup., 1965); Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953).

■ Special Issue No. 2 inquired of the jury: "Do you find from a preponderance of the evidence that Blaylock Jr. held the 809 shares of the Roberts stock as trustee for the joint and equal benefit of the Plaintiff Smith and the defendants Crockett, Parnass and Blaylock Jr.?", to which

the jury responded in the affirmative. Appellants complain that the evidence is legally insufficient as that there is no evidence to support the submission of Special Issue No. 2. We disagree. A review of the record reveals that: (1) when the first 809 shares of the Roberts' stock were purchased, they were placed in the name of Louis Blaylock, Trustee; (2) the purchase money for the 809 shares came from the proceeds of a note signed by appellee and appellants and from the advancement of personal funds by appellee; and (3) an admission was made by Blaylock, Jr. that he was trustee for the appellants and appellee. We cannot say from our review of the record that the trial court erred in the submission of Special Issue No. 2 on the grounds that the evidence was legally insufficient to warrant such a submission. Further, we cannot say that the evidence was legally insufficient to support the finding that Blaylock, Jr. held the stock as trustee, along with the resulting legal duties, for appellants and appellee. The evidence in our opinion is sufficient to sustain a finding of a resulting trust. 57 Tex.Jur. 2d, Trusts, sec. 42, p. 423 defines a resulting trust: "Broadly speaking, the facts out of which a trust results fall into the following categories: cases in which property was brought in the name of A but wholly or in part with funds furnished by B * * *." The evidence clearly reflects that the legal title to the trust shares was taken in the name of Blaylock, Trustee. Further, that Blaylock paid for the stock with consideration furnished in part by appellee, such consideration being appellee's advancement of personal funds (a check in the amount of $750.00) and his execution of the $302,625 note which created joint and several liability on the part of appellee. See Wimberly v. Kneeland, 293 S.W. 2d 526 (Tex.Civ.App., Galveston, 1956, ref., n. r. e.).

■ Appellants attack the award of $550.00 as the value of the converted stock on the ground there was no competent evi-

dence to support such finding of the jury in response to Special Issue 3.[1]

Appellants' objection complained of the failure of Special Issue No. 3 to make a distinction between minority and control stock. In connection with their objection to Special Issue No. 3, appellants requested the following instruction:

"In answering this question, do not include any premium based upon a sale of control but assign a fair market value which would apply to minority stock."

The central thrust of appellants' argument is that the jury was erroneously allowed to consider the control price in reaching the fair market value of the stock alleged to have been converted. We cannot agree. The stock allegedly converted was the Roberts' stock—some 809 shares held in trust by Blaylock, Jr. for himself, the other two appellants and appellee. It is uncontroverted, we think, that these shares (the Roberts' stock) were included in the transfer to the control group, and that the fair market price of the control stock was $550.00. The purchasing group wanted to buy only enough stock to have actual control, and it was not necessary to acquire all of the stock of Blaylock, Jr. and Parnass, so some shares were issued back to them. This reissue to Blaylock, Jr. and Parnass has no effect on the question here. The date of conversion was the April transfer of the Roberts' stock. Even if we could determine that by some formula Smith's interest in the Roberts' stock was carved out and later reconveyed to appellants, they were never tendered to appellee, nor has he ever recovered payment. To say therefore that the jury could not consider the value of the control stock is incorrect.

Further, a review of the evidence discloses that even if the jury were denied the evidence of the control price, there exists in the record sufficient evidence from which the jury could have arrived at its answer. Testimony from both appellant Crockett and Mr. Westmoreland (a member of the purchasing group) indicates that at times subsequent to the April transfer of the Roberts' stock, shares owned by appellants Crockett and Parnass were sold to the control group at $550.00 per share.

Returning to appellants' complaint that the trial court erred in submitting Special Issue No. 3, we think the appellants again fail in their argument.

Appellants, upon objecting to the submission of Special Issue No. 3, were required to tender in substantially correct form the issue or instruction upon which they relied. Rule 279, Texas Rules of Civil Procedure. In light of our previous decision of the question of stock value, the submission of appellants' requested instruction would have constituted a comment on the weight of the evidence. The instruction appellants requested by its very terms excluded any consideration of the control price and this we think under the record was clearly erroneous.

Appellants Crockett and Parnass by their second point and appellant Blaylock by his points 9–18 attack the award of punitive damages. After thorough consideration of appellants' argument, the cases, and the record, we must sustain these points.

This court was presented with the question of punitive damages in Scurlock Oil Company v. Joffrion, 390 S.W.2d 526 (Tex.Civ.App., 1965, n. w. h.), where we

---

1. "From a preponderance of the evidence what do you find to be the market value of the Irving Savings & Loan stock per share on April the 12th, 1969?

"MARKET VALUE means the amount which would be paid by a willing buyer who desires to buy but is not required to buy to a willing seller who desires to sell but is under no necessity of selling.

"ANSWER in dollars, if any, or cents, if any, or none.

"ANSWER $550.00."

stated in regard to what the evidence must show:

"* * * The evidence must show some element of fraud, malice or oppression, and the conduct of the defendant must be actuated by or accompanied with some evil intent or result from such gross negligence that the same may be regarded as an intentional injury. * * *

"Damages by way of punishment, as a general rule, may not be awarded where it appears that the defendant acted in good faith or without wrongful intention or in the good faith belief that he was exercising his right. * * *"

Under this statement and like rule in the recent case of Ogle v. Craig, 464 S.W.2d 95 (Tex.Sup., 1971), we must, upon reviewing the record, hold that there is no evidence to support a finding of punitive damages.

It should be kept in mind that throughout the entire transaction between appellants and appellee that appellants acted upon the belief that appellee's claim was unfounded. The actual date of conversion was some two months after appellee had been discharged from his position. Too, it is important, we think, to note that appellee's joint and several liability for the note given for the Roberts' stock was discharged by appellants. Appellee alleged in his petition as follows: "* * * because all parties wished to consummate the Roberts' stock purchase, it was agreed between Plaintiff and Defendants that the first block of 809 shares to be acquired from Mrs. Roberts would be transferred on the books of the corporation to Louis Blaylock, Jr. as Trustee. Said shares were so transferred to the said Louis Blaylock, Jr., Trustee, as Trustee for the joint use and benefit of all Defendants and Plaintiff, in view of Defendants refusal to recognize Plaintiff's entitlement to more than 25 percent of the Roberts' stock *and until some resolution could be had of their differences.*" (Emphasis supplied.) Appellee

further alleged that after the dispute arose and the Roberts' stock was placed in Blaylock, Jr., as trustee, both appellants and appellee commenced trying to negotiate a sale of controlling interest in the Irving Savings and Loan Association. Appellee does not deny that he agreed to the arrangement whereby the 809 shares of the Roberts' stock was to be placed in Blaylock, Jr. as trustee. Thereafter he did not demand delivery of the shares. On the contrary he, along with appellants, commenced trying to sell controlling interest in the savings and loan company at the best price available. He does not contend that he desired to keep his shares, nor does he assert he had any objection to the sale of the Roberts' stock for the sum of $550.00 per share. The sole grounds for his claim for exemplary damages is based upon the fact that after appellants sold the Roberts' stock for $550 per share they refused to deliver him one-fourth of the money representing his one-fourth interest in the Roberts' stock. In view of the agreement allowing Blaylock, Jr. to hold the Roberts' stock as trustee until the parties could resolve their differences, it appears that appellee recognized and agreed that his interest in the trust would not be delivered to him until such time as the parties were able to voluntarily resolve their differences or until such time same were resolved by litigation determining the rights of the parties. Thus, we fail to see how malice or bad faith could be imputed to appellants for failing to pay appellee his share of the funds prior to final determination of the rights of the parties by judgment. From a review of the entire record, we are convinced that the evidence falls far short of the legal requirements for punitive damages and appellants' points regarding the same are sustained.

We have carefully reviewed appellants' remaining points and finding no reversible error, they are hereby overruled.

That portion of the trial court's judgment awarding to the appellee the sum of $25,000.00 as exemplary damages is re-

versed and rendered for the appellants and the judgment in all other respects is affirmed.

Judgment reversed and rendered in part and affirmed in part.