Sam **FISHER, Edith Fisher d/b/a Fisher's Truck World, Bill McNatt, Connie Matika, and Gale Fisher Huggins,** Appellants,

v.

**Jim YATES and FirstBank of Texarkana,** Appellees.

No. 06–96–00098–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 3, 1997.

Decided July 18, 1997.

Opinion Overruling Rehearing Oct. 10, 1997.

Jack N. Price, Austin, for appellants.

Hermann Ivester, Ivester, Skinner, Camp, Little Rock, AR, William C. Gooding, Gooding & Dodson, Texarkana, for appellee First Bank.

Steven W. Caple, George L. McWilliams, Patton, Haltom, Roberts, Texarkana, for appellee Jim Yates.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Sam Fisher, Edith Fisher, Bill McNatt, Connie Matika, and Gale Fisher Huggins,[1] appeal from an adverse summary judgment rendered in their suit against Jim Yates, FirstBank of Texarkana, Gene Wyatt, and Ron Walker, seeking damages for fraudulent representation, fraudulent concealment, statutory fraud, and conspiracy. Because we find that Edith Fisher's, Connie Matika's, and Gale Fisher Huggins's conspiracy claims were filed after the applicable two-year statute of limitations had expired, we affirm the summary judgment for Yates and FirstBank on these claims. We also affirm the sum-

---

**1.** Plaintiffs will be referred to collectively as the Fisher group for the remainder of this opinion.

mary judgment for Wyatt and Walker. We reverse the summary judgment for Yates and FirstBank on Fisher's and McNatt's fraud and conspiracy allegations. Those claims are severed and remanded to the district court for trial.

Sam Fisher owns and operates a used car/truck business in Texarkana, Texas. Edith Fisher is his wife. Connie Matika and Gale Fisher Huggins are his daughters. Fisher conducted most of his banking business with FirstBank. Over a period of years, Fisher purchased 1,734 shares of FirstBank stock. Bill McNatt is also in the used car/truck business and used FirstBank for most of his banking services. McNatt purchased 1,004 shares of FirstBank stock over the years.

Jim Yates purchased McNatt's 1,004 shares of FirstBank stock in November 1992 for $50.00 per share, and he purchased Fisher's 1,734 shares in June 1993 for $57.67 per share. In July 1994, FirstBank was acquired by First United. The Fisher group alleges that Yates was aware of the impending sale of FirstBank when he purchased McNatt's and Fisher's stock. In the sale of FirstBank to First United, Yates received $241.00 for each share he owned in FirstBank, realizing a net profit in excess of $515,000.00 on the stock he purchased from Fisher and McNatt.

Fisher and McNatt contend that Yates fraudulently induced them to sell their First-Bank stock. They allege that Yates told Fisher in late fall 1992 that Gene Wyatt, FirstBank's chairman, was considering "kicking Fisher out" of the bank, meaning that FirstBank was going to stop doing business with him. Yates also allegedly told Fisher that the bank had scheduled a board of directors meeting to discuss the issue. Fisher further contends that Yates told him that if he sold his FirstBank stock to him, he would use his influence as a director to ensure that FirstBank would continue doing business with Fisher. Fisher also alleges that Yates encouraged him to persuade McNatt to sell his FirstBank stock to Yates. Fisher told McNatt about Yates's statements.

On October 31, 1994, Fisher and McNatt filed suit against Yates, FirstBank, Wyatt, and Ron Walker[2] alleging that Yates engaged in fraudulent representations, fraudulent concealment, and statutory fraud[3] and that FirstBank, Wyatt, and Walker acted in "concert, combination, and conspiracy" with Yates in the acquisition of Fisher's and McNatt's FirstBank stock.

On June 28, 1995, Wyatt, Walker, and FirstBank filed a motion for summary judgment. The trial court granted summary judgment as to Wyatt and Walker, but denied it as to FirstBank. Yates and First-Bank subsequently filed separate summary judgment motions. The trial court granted these motions, ordering that the Fisher group take nothing.

We first consider whether we have jurisdiction of this appeal. We conclude that we do.

Texas appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex. 1985). There can be only one final judgment. Tex.R. Civ. P. 301. A judgment is final for purposes of appellate jurisdiction if it disposes of all issues and parties in a case and no further action is required to determine the controversy. *Houston Health Clubs, Inc. v. First Court of Appeals*, 722 S.W.2d 692, 692 (Tex.1986); *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966). If a summary judgment order appears to be final and disposes of all claims or parties, the judgment should be treated as final for purposes of appeal. *Inglish v. Union State Bank*, 945 S.W.2d 810, 810–11 (Tex.1997); *Mafrige v. Ross*, 866 S.W.2d 590, 592 (Tex. 1993).

There are two judgments in this case. The first one, dated September 7, 1995 and entitled "Judgment," was rendered in response to Wyatt, Walker, and FirstBank's summary judgment motion. The judgment dismisses with prejudice Fisher and McNatt's claims against Wyatt and Walker in their individual capacity and orders that

---

2. Ron Walker serves as a FirstBank vice president.

3. *See* Tex. Bus & Com.Code Ann. § 27.01 (Vernon 1987).

"the plaintiffs recover nothing from Gene D. Wyatt or Ron Walker." The judgment denied FirstBank's request for summary judgment. No severance was ordered. The second judgment, rendered on October 22, 1996 and entitled "Final Summary Judgment," was issued in response to Yates's and FirstBank's summary judgment motions. The judgment dismisses the Fisher group's claims against Yates and FirstBank and orders that they take nothing against the defendants. The second order makes no reference to the first order.

The first order, granting summary judgment to Wyatt and Walker but denying it to FirstBank, was interlocutory. It became final, however, when the second judgment was entered disposing of the remaining defendants. *See, e.g., H.B. Zachry Co. v. Thibodeaux,* 364 S.W.2d 192, 193 (Tex.1963); *Ramones v. Bratteng,* 768 S.W.2d 343, 344 (Tex. App.—Houston [1st Dist.] 1989, writ denied).

The second judgment makes no reference to the first order, but it is not necessary that all parties and issues be disposed of in a single document. *Mafrige v. Ross,* 866 S.W.2d at 591 n. 5. The language of the second judgment purports to be final and disposes of all remaining issues and parties in this action. As such, it operates as a final and appealable judgment.

The Fisher group's first point of error merely asserts that the trial court erred in granting the defendants' summary judgment motions. There is no citation of authority under the point and, for that reason, it could be considered waived. But the second point of error addresses the same issue and it is adequately briefed, so it will be duly considered.

The Fisher group contends in its second point that the trial court erred in granting summary judgment because the evidence raised issues of fraud, conspiracy, and injury, and the claims are not barred by the statute of limitations.

In reviewing a summary judgment, we must determine whether the moving party has met its burden of establishing that there is no genuine issue of material fact between the parties and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Lawrence v. Lawrence,* 911 S.W.2d 443, 446 (Tex.App.—Texarkana 1995, writ denied).

A defendant moving for summary judgment must disprove at least one of the essential elements of each cause of action alleged by the plaintiff to be entitled to summary judgment. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). A defendant must only meet the plaintiff's case as pleaded. *Cook v. Brundidge, Fountain, Elliott & Churchill,* 533 S.W.2d 751, 759 (Tex.1976).

Once the movant has established a right to summary judgment, the nonmovant must respond by presenting to the trial court summary judgment evidence raising a material fact issue, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Christensen v. Sherwood Ins. Servs.,* 758 S.W.2d 801, 804 (Tex.App.—Texarkana 1988, writ denied). Grounds supporting or opposing summary judgment must be raised in the motion or written response. *Maintenance, Inc. v. ITT Hartford Group, Inc.,* 895 S.W.2d 816, 820 (Tex.App.—Texarkana 1995, writ denied).

Given the interaction among the parties and the Fisher group's causes of action, we will first address the merits of their assertions as they apply to Yates.

Yates initially asserts that the Fisher group's second point of error does not apply to him. He contends that the error relates exclusively to the viability of a civil conspiracy claim against Wyatt, Walker, and First-Bank. We disagree. The second point of error states, "The trial court erred in rendering judgment against the appellants because the summary judgment proof raised issues of fraud, conspiracy, and injury to the plaintiffs." The plain language of the error applies to all of the defendants.

Yates attached to his summary judgment motion affidavits in which he denies that he had any advance knowledge of the potential sale of FirstBank, denies that he pressured or otherwise coerced Fisher to sell his stock,

and asserts that he paid Fisher and McNatt a fair price for their FirstBank stock.

■ The Fisher group filed a response to Yates's summary judgment motions, but the response did not attach, nor was it accompanied by, summary judgment evidence supporting the facts alleged in the response. A response to a summary judgment motion is a pleading and does not, standing alone, constitute competent summary judgment evidence. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d at 678; *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex.1971); *Washington v. City of Houston*, 874 S.W.2d 791, 794 (Tex.App.—Texarkana 1994, no writ); *Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 522 (Tex.App.—Texarkana 1993, writ denied); *Cuellar v. City of San Antonio*, 821 S.W.2d 250, 252 (Tex.App.—San Antonio 1991, writ denied); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 379 (Tex.App.—Texarkana 1989, no writ); *Russell v. Texas Dep't of Human Resources*, 746 S.W.2d 510, 512–13 (Tex.App.—Texarkana 1988, writ denied); *Nicholson v. Memorial Hosp. Sys.*, 722 S.W.2d 746, 749 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Because the response is unaccompanied by any supporting summary judgment evidence, we must determine whether Yates's motion is legally sufficient to support summary judgment, since the Fisher group, by default, has failed to raise any genuine issues of material fact.

■ Yates's motion, to be sufficient, must conclusively negate at least one element of each of the Fisher group's alleged causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d at 471; *McKillip v. Employers Fire Ins. Co.*, 932 S.W.2d 268, 269–70 (Tex.App.—Texarkana 1996, no writ). The alleged causes of action against Yates include fraudulent representations, fraudulent concealment, statutory fraud, and civil conspiracy. These actions rest on common law fraud concepts. *See, e.g., Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1025 n. 4 (5th Cir.1990); *Chien v. Chen*, 759 S.W.2d 484, 494–95 (Tex.App.—Austin 1988, no writ). Fraud and conspiracy, however, are separate torts. *Bosworth v. Gulf Coast Dodge, Inc.*, 879 S.W.2d 152, 160 (Tex.App.—Houston [14th Dist.] 1994, no writ).

■ To establish fraud, the plaintiff must prove that the defendant made a material representation that was false, that the defendant knew it was false or recklessly made the representation without knowledge of the truth and as a positive assertion, that he made the statement with the intention that it be acted upon by the plaintiff, that the plaintiff did act in reliance on it, and that the plaintiff suffered injury as a result of the representation. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977); *First City Bank of Richardson v. Global Auctioneers Inc.*, 708 S.W.2d 12, 17 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.).

■ The elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) meeting of the minds on the object or course of action; (4) one or more unlawful acts; and (5) damages as a proximate result. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983); *Closs v. Goose Creek Consol. Independent Sch. Dist.*, 874 S.W.2d 859, 871–72 (Tex.App.—Texarkana 1994, no writ).

Yates's motion was supported by affidavits from himself, Gene Wyatt, and James Kelley. Yates's affidavit states that he did not have any knowledge of the potential sale of First-Bank. He said he did not know of First United's interest in acquiring FirstBank until December 1992. He stated that FirstBank's board of directors advised First United in January 1993 that they were not interested in being acquired and terminated all discussions with First United. Yates stated that he served on FirstBank's board of directors until October 1993. He stated that he was not aware of any discussion or contact regarding the possible sale of FirstBank when he resigned from the board of directors.

Yates stated that he purchased McNatt's FirstBank stock for $50.00 a share on or about November 6, 1992. This was well before First United contacted FirstBank about possible acquisition. Yates bought Sam Fisher's stock on June 3, 1993, for $57.67 per

share.[4] This was about five months after FirstBank refused First United's acquisition offer. Yates stated there were no discussions regarding the potential sale of First-Bank between January 1993 and the sale of Fisher's stock in June 1993.

Wyatt's and Kelley's affidavits support Yates's assertion that the stock purchases were made without knowledge of FirstBank's potential sale or FirstBank's participation.

Wyatt's affidavit states that he did not participate, or benefit in any way, with Yates in his purchase of Fisher's and McNatt's stock; that when Yates purchased McNatt's and Fisher's FirstBank stock there were no offers to acquire the bank; that no meeting was ever held to discuss "kicking" either Fisher or McNatt out of the bank or to stop providing banking services to either individual; and that generally the bank continued to provide credit to Fisher as late as February 1991.

Kelley's affidavit explains the events leading to First United's acquisition of First-Bank.[5] Kelley stated that he first contacted Wyatt regarding the possible acquisition of FirstBank in December 1992. Several discussions were held in December 1992 and January 1993. Kelley stated that Wyatt informed him in late January 1993 that First-Bank was not interested in being acquired by First United. Kelley stated that his next contact with FirstBank about a possible acquisition was in April 1994. Kelley stated that FirstBank expressed an interest at that time and an agreement was reached on July 28, 1994.

 Yates also attached McNatt's and Fisher's answers to interrogatories as part of his summary judgment proof. Interrogatories are proper summary judgment evidence. TEX.R. CIV. P. 166a(c), (f); *Lawrence v. Lawrence,* 911 S.W.2d at 449.

In his response to Interrogatory #6, which asked whether Yates had advance knowledge of the potential sale of FirstBank before he bought McNatt's and Fisher's stock, McNatt stated that he did not have any direct knowledge of the relevant facts at that time. He also stated in response to Interrogatory #21 that he made his decision to sell his FirstBank stock to Yates "based on representations made by Yates to Fisher as related to me by Fisher." McNatt also stated, however, that Fisher did not persuade him to sell his stock. McNatt admitted that he was not present for any of the discussions between Yates and Fisher.

Fisher also stated in his response to Interrogatory #6, regarding Yates's advance knowledge of FirstBank's potential sale, that he did not have any direct knowledge of the relevant facts at that time. He said that Yates told him Wyatt and FirstBank's board of directors were considering ceasing doing business with him and that if he sold his FirstBank stock to Yates, he would use his influence to ensure that the bank would continue doing business with him. Fisher stated that he was persuaded to sell his stock to Yates based on Yates's statements and representations.

 Yates also included excerpts from Fisher's oral deposition as part of his summary judgment proof. Deposition excerpts are proper summary judgment evidence. TEX.R. CIV. P. 166a(c); *McConathy v. McConathy,* 869 S.W.2d 341, 342 (Tex.1994).

The deposition excerpts show that, even though Fisher alleges that Yates had inside information regarding FirstBank's potential sale, Fisher did not have any evidence to support the allegations. Fisher also stated that, other than Yates's promise to use his influence with FirstBank to ensure that the bank continued doing business with him, he could not identify any other misrepresentation or falsehood.

We are required to take as true all evidence favorable to the nonmovant and indulge all reasonable inferences and resolve

---

**4.** Yates states that Edith Fisher sold Fisher's FirstBank stock to Stacy Floyd on or about June 3, 1993. Fisher alleges that Yates purchased the stock. Yates does not deny this allegation. The record does not identify Stacy Floyd or explain his relationship to Yates.

**5.** James V. Kelley is the chairman of the board of directors, president, and chief executive officer of First United Bancshares, Inc.

all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d at 548–49; *Lawrence v. Lawrence,* 911 S.W.2d at 446. We cannot consider evidence favoring the movant unless is it uncontradicted. TEX.R. CIV. P. 166a(c); *see also Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965); *Germany v. Frank G. Love Envelopes, Inc.,* 582 S.W.2d 889, 891 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.).

We conclude that Yates's summary judgment evidence does not conclusively negate all allegations of his conduct leading to and including his purchase of Fisher's and McNatt's stock, as it relates to Fisher's fraud and conspiracy allegations.

Fisher's answers to interrogatories allege that Yates made material misrepresentations to Fisher and that Fisher relied on the misrepresentations to his detriment when he made his decision to sell Yates his stock. These answers were included as part of Yates's summary judgment proof. In his answers, Fisher stated:

> Yates told me that he (Yates) had been told that Wyatt and the board of directors of the Bank were considering kicking me out of the bank, i.e., ceasing to do any banking business with me. Yates also told me that they (the board of directors) had called a special meeting to get rid of me. Yates pressured me and told me that if I would sell my stock in the Bank to him, he would use his influence with the Bank and Wyatt to insure that the Bank continued doing business with me. Yates also told me to persuade McNatt to sell his stock to Yates. The threat that if I did not do as Yates wanted, my banking relations with the Bank would be terminated was confirmed in my mind by the fact that my loan officer, Walker, had on several occasions refused to loan me money although I had an excellent payment history, a profitable business, and more than adequate collateral to secure every loan requested.

McNatt also stated that he made his decision to sell his FirstBank stock to Yates, "based on representations made by Yates to Fisher as related to me by Fisher."

Yates provided summary judgment evidence from Wyatt disputing the fact that FirstBank was considering terminating its banking relationship with Fisher or McNatt. Wyatt's affidavit, however, does not irrefutably contradict Fisher's version of his conversation with Yates.

Materiality is an issue of causation. A representation is material if it induces a party to act. *Manges v. Astra Bar, Inc.,* 596 S.W.2d 605, 611 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e). Courts also use a "but for" test to determine materiality. *See* 3 J. HADLEY EDGAR, JR. & JAMES B. SALES, TEXAS TORTS AND REMEDIES § 44.02[2][a] (1997). Yates's statements to Fisher meet both of these tests.

When a future event is involved, such as here, the promise must involve a definite commitment to perform a certain act and the plaintiff must prove that, at the time the promise was made, the defendant did not intend to perform it. *See, e.g., Dowling v. NADW Mktg., Inc.,* 631 S.W.2d 726, 727–28 (Tex.1982). Given Wyatt's statements that FirstBank never intended to stop providing banking services to either Fisher or McNatt, a reasonable person could conclude that, accepting Fisher's statements in the interrogatory answers as true, as we are required to do, Yates never intended to perform when he made his alleged promises to Fisher.

We must, therefore, conclude that on Fisher and McNatt's fraud claim a genuine fact issue exists regarding the making and the materiality of the statements Yates allegedly made to Fisher before his purchase of the stock and Fisher's reliance on those statements.

This does not end our inquiry. Yates would still be entitled to summary judgment if he can show that the plaintiffs did not suffer any injury.

Fisher and McNatt's allegations rest on the premise that Yates had inside information about the potential sale of FirstBank. If Yates was aware that FirstBank was about to be acquired, he stood in a fiduciary relationship with FirstBank's minority stockholders, such as Fisher and McNatt, and had a

duty to disclose that information.[6] *See, e.g., International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 577 (Tex.1963); *Gaither v. Moody,* 528 S.W.2d 875, 877 (Tex.Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

McNatt sold his stock to Yates on November 6, 1992. Yates's summary judgment evidence conclusively establishes that First United did not approach FirstBank about possible acquisition until early December 1992. This was about a month after Yates's purchase of McNatt's FirstBank stock. There is no summary judgment evidence that a potential sale was even being considered at the time of Yates's purchase of McNatt's stock. Thus, no fiduciary duty was implicated.

Fisher sold his stock to Yates on June 3, 1993. Yates's summary judgment evidence conclusively establishes that FirstBank refused First United's acquisition offer in January 1993; that Yates did not participate in this decision; and that there was no other offer to acquire FirstBank until First United made its second approach in April 1994. Yates's purchase of Fisher's stock was made after FirstBank refused First United's offer and at least ten months before FirstBank received another acquisition offer. Thus, no fiduciary duty was implicated.

Yates stated in his affidavit that he paid fair market value for Fisher's and McNatt's FirstBank stock. This is a conclusory opinion unsupported by any factual allegations, and at best can only be considered as raising a fact issue. Fisher stated that Yates determined the price of the stock, and he accepted it without any negotiation. He also states in his response that the book value of First-Bank's stock was $151.02 per share shortly before the bank was sold. This may be true, but it is not relevant to the stock's value in November 1992 or June 1993, when Yates purchased McNatt's and Fisher's stock. In addition, the Fisher group fails to provide any summary judgment evidence supporting this assertion.

Fair market value has been defined as "the price at which the stock would change hands between a willing seller, under no compulsion to sell, and a willing buyer, under no compulsion to buy, with both parties having reasonable knowledge of relevant facts." *Inter-First Bank Dallas, N.A. v. Risser,* 739 S.W.2d 882, 889 (Tex.App.—Texarkana 1987, no writ); *Crockett v. Smith,* 485 S.W.2d 321 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.).

Yates's summary judgment evidence asserts that he had no knowledge of a potential sale of FirstBank. Accepting Fisher's version of his conversation with Yates, however, as he related it in his answers to interrogatories, it cannot be said that Fisher and McNatt were "willing sellers with no compulsion to sell." They sold their stock with the expectation, induced by Yates, that it would improve Fisher's dealings with FirstBank. The evidence fails to conclusively establish that Yates paid a fair market value for Fisher's and McNatt's stock. Moreover, if there was a known likelihood that FirstBank would be sold in the near future, the stock would have a potential market value higher than the actual value at the time of sale.

Because Yates failed to negate at least one essential element of Fisher and McNatt's fraud actions, summary judgment on the fraud claims was not proper.

Assessing the trial court's granting of summary judgment on conspiracy grounds is difficult due to the Fisher group's failure to provide the court with any supporting summary judgment evidence. Evidence favoring Yates, however, cannot be considered unless it is uncontradicted. TEX.R. CIV. P.166a(c).

Conspiracy may be established by circumstantial evidence. *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567. According to the Texas Supreme Court:

> The general rule is that conspiracy liability is sufficiently established by proof

---

**6.** Mere inquiries, preliminary discussions, or preparatory communications to a possible acquisition do not require disclosure. *Voskamp v. Arnoldy,* 749 S.W.2d 113, 119 (Tex.App.—Houston [1st Dist.] 1987, writ denied). Disclosure is required only when there are firm offers or an acquisition seems reasonably assured at the time the corporation's insiders are purchasing shares from shareholders. *Id.* Yates was on First-Bank's board of directors when he made his stock purchases.

showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention, or purpose of the alleged conspirators.

*Id.* at 581.

The summary judgment rule is not intended to permit a trial by deposition or affidavit, and a motion for summary judgment should not be resolved by weighing the relative strength of conflicting facts and inferences. *Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427, 435 (Tex.App.—San Antonio 1993, writ denied). Fisher's answers to interrogatories as to what Yates told him about FirstBank's intent to "kick him out" of the bank, together with the affidavits from Yates and Wyatt, raise questions as to the credibility and the weight of the evidence, as well as what reasonable inferences arise from such evidence. Therefore, Yates's contrary evidence, as the movant, cannot be considered. Consequently, summary judgment for Yates on Fisher and McNatt's conspiracy grounds was improper.

 The Fisher group also asserts that the conspiracy claims of Edith Fisher, Connie Matika, and Gail Fisher Huggins are not barred by limitations; thus, the trial court erred in granting summary judgment against them. We disagree.

Yates attached to his motion deposition excerpts from Huggins, Matika, and Edith Fisher. These excerpts show that Matika and Huggins purchased FirstBank stock from their mother, Edith Fisher, in 1990. Matika purchased about 300 shares for $5,000.00. Huggins purchased $2,900.00 worth of stock. Both daughters received $19,577.05 as their share of the proceeds from Fisher's sale of his stock to Yates.

The discovery rule applies to conspiracy to commit fraud. *Cathey v. First City Bank of Aransas Pass*, 758 S.W.2d 818, 822 n. 3 (Tex.App.—Corpus Christi 1988, writ de-

nied). The latest time at which Fisher's wife and daughters could have reasonably discovered their injury was in October 1993, when they learned that Yates had resigned as a director of FirstBank without having improved Fisher's position with FirstBank. The date referenced in Fisher's pleadings is June 6, 1993, when Yates purchased the Fisher stock. Matika and Huggins were not joined as plaintiffs in this suit until Fisher filed his second amended petition on August 21, 1996. The June and October 1993 dates are well past the two-year limitation period barring actions for conspiracy.

Yates has met his burden of establishing entitlement to summary judgment as a matter of law on this issue. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d at 548; *Lawrence v. Lawrence*, 911 S.W.2d at 446. We affirm the summary judgment relating to the conspiracy allegations involving Fisher's wife and daughters.

We now address the summary judgment as it relates to FirstBank. FirstBank initially asserts in its second summary judgment motion that the Fisher group failed to plead fraud as a cause of action. We disagree.

 A petition must give fair and adequate notice of the facts relied on by the petitioner in order to provide the opposing party with sufficient information to enable him to prepare a defense. TEX.R. CIV. P. 45, 47; *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex.1982); *Lawyers Surety Corp. v. Royal Chevrolet, Inc.*, 847 S.W.2d 624, 627 (Tex.App.—Texarkana 1993, writ denied).

 The Fisher group's pleadings allege that Yates engaged in fraudulent representations, fraudulent concealment, and statutory fraud,[7] and that FirstBank "acted in concert, combination, and conspiracy" with Yates in the acquisition of the plaintiffs'

---

7. The reliance and materiality elements of statutory fraud, TEX. BUS. & COM CODE ANN. § 27.01 (Vernon 1987), do not differ from common law fraud. *Haralson v. E.F. Hutton Group, Inc.* 919 F.2d 1014, 1025 n. 4 (5th Cir.1990). A plaintiff has the discretion to sue under this statute, common law fraud, or both. *Wright v. Carpenter*, 579

stock.[8] FirstBank filed several special exceptions against the Fisher group's pleadings contending, *inter alia*, that paragraphs 14 and 20 (stating that FirstBank had advance knowledge of the sale or potential sale of the bank and that FirstBank acted in concert, combination, and conspiracy with Yates), of the first amended original petition were "[v]ague, overly broad, and failed to give fair notice as required by Rule 47" and that the petition failed "[t]o state a cause of action against FirstBank upon which relief can be granted." The court did not order the Fisher group to replead or clarify their petition.

■ The Fisher group did not expressly plead fraud against FirstBank, but a plaintiff is not required to use the term "fraud" if the factual allegations include all the elements of fraud. *Smith v. Harrison County*, 824 S.W.2d 788, 792 (Tex.App.—Texarkana 1992, no writ).

■ Fisher expressly pleaded conspiracy as a cause of action against First-Bank. Civil conspiracy is based on an underlying tort-in this case, fraud. *See Schoellkopf v. Pledger*, 778 S.W.2d 897, 900 n. 5 (Tex.App.—Dallas 1989, writ denied). The alleged wrongful act must be actionable against the individual conspirators. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d at 581; *see generally* 1 J. HADLEY EDGAR, JR. & JAMES B. SALES, TEXAS TORTS AND REMEDIES § 3.02[2] (1997). Conspiracy is a derivative tort. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996).

■ The test of the sufficiency of a pleading is whether a reasonably competent attorney can ascertain the nature and issues of the controversy and the probable relevant testimony. *State Fidelity Mortgage Co. v. Varner*, 740 S.W.2d 477, 479 (Tex.App.—Houston [1st Dist.] 1987, writ denied). The Fisher group's pleadings state the elements and facts needed to allege fraud against Yates. The pleadings state that FirstBank "acted in concert, combination, and conspiracy" with Yates in the acquisition of plaintiffs'

stock. The effect of these sections is sufficient to notify a reasonably competent attorney that FirstBank, in addition to civil conspiracy allegations, also faced allegations of fraud.

FirstBank failed to expressly contest fraud as a fact issue in its second summary judgment motion and did not provide the court with any supporting summary judgment evidence on this point. FirstBank merely states that "the summary judgment proof establishes that this action against FirstBank is for civil conspiracy in connection with an alleged fraud perpetrated by defendant Yates." FirstBank also relies on Yates's summary judgment motion asserting that if the trial court finds that Yates's summary judgment evidence conclusively establishes that Yates did not violate any duty owed Fisher or McNatt, or that Fisher and McNatt received fair market value for their stock, then FirstBank is also entitled to summary judgment. As discussed *supra*, Yates is not entitled to summary judgment on this point; neither is FirstBank.

The remainder of FirstBank's summary judgment motion asserts that Fisher's wife's and daughters' conspiracy claims are barred by limitations. It does not address the conspiracy claims as they relate to Sam Fisher and McNatt. Since these claims were not addressed in FirstBank's summary judgment motion, it was not entitled to summary judgment on those claims.

The statute of limitations for civil conspiracy is two years. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986); *Stevenson v. Koutzarov*, 795 S.W.2d 313, 318 (Tex.App.—Houston [1st Dist.] 1990, writ denied). FirstBank included excerpts from the oral depositions of Gale Fisher Huggins, Connie Matika, and Edith Fisher in the body of its motion for summary judgment. These excerpts show that the daughters purchased the stock from their mother in 1990. Each daughter received $19,577.05 as their share of the proceeds from the stock sale.

S.W.2d 575, 578 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

**8.** The Texas Supreme Court considers the "concert in action" theory of joint and several liability

an open question in Texas. *See Juhl v. Airington*, 936 S.W.2d 640, 643–45 (Tex.1996); *see also* 1 J. HADLEY EDGAR, JR. & JAMES B. SALES, TEXAS TORTS AND REMEDIES § 3.02[2] (1997).

Deposition excerpts are proper summary judgment evidence. Tex.R. Civ. P. 166a(c); *McConathy v. McConathy,* 869 S.W.2d at 342. They must, however, be attached to the summary judgment motion to be considered summary judgment proof. These excerpts were included in the body of FirstBank's summary judgment motion.

Summary judgment motions are pleadings and, standing alone, do not constitute competent summary judgment evidence. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d at 678; *Hidalgo v. Surety Sav. & Loan Ass'n,* 462 S.W.2d at 543; *Lawrenson v. Global Marine, Inc.,* 869 S.W.2d at 522; *Cuellar v. City of San Antonio,* 821 S.W.2d at 252; *Russell v. Texas Dep't of Human Resources,* 746 S.W.2d at 512–13. FirstBank's motion can be used to outline the issues, *see, e.g., Shawell v. Pend Oreille Oil & Gas Co.,* 823 S.W.2d 336, 338 (Tex.App.— Texarkana 1991, writ denied), but it cannot be relied on to raise a material fact issue.

FirstBank failed to provide any summary judgment proof in support of its summary judgment motion. Consequently, there is no summary judgment proof regarding the running of the statute of limitations on Edith Fisher's, Matika's, and Huggins's conspiracy allegations.

A conspiracy, however, requires the participation of "two or more persons." *Massey v. Armco Steel Co.,* 652 S.W.2d at 934; *Closs v. Goose Creek Consol. Sch. Dist.,* 874 S.W.2d at 871–72.

Yates provided sufficient summary judgment evidence to show his entitlement, as a matter of law, to summary judgment on these same conspiracy claims. FirstBank, as a matter of law, cannot be engaged in a civil conspiracy by itself. Therefore, even though FirstBank failed to provide supporting summary judgment evidence, summary judgment on these issues for Yates inures to First-Bank's benefit and supports summary judgment for it as well.

The Fisher group also contends that the trial court erred in granting summary judgment to Gene Wyatt and Ron Walker.

FirstBank, Wyatt, and Walker moved for summary judgment. Their summary judg-

ment evidence consisted of affidavits from Wyatt, Walker, Gail Reese and James Kelley; Fisher's answers to Yates's first set of interrogatories; and McNatt's answers to Yates's first set of interrogatories.

The affidavits assert that Wyatt and Walker did not engage in any act of fraud or conspiracy. Wyatt's affidavit states that he had no knowledge of Yates's actions regarding Yates's purchase of Fisher's or McNatt's stock. He stated that he approved all of Fisher's and McNatt's loan applications from January 1990 through December 1993. He stated that no meeting was ever held to "kick out" McNatt or Fisher.

Walker's affidavit states that he did not have any knowledge of Yates's purchase of Fisher's or McNatt's stock. He stated that he worked with Fisher on his loan applications to FirstBank and recommended that the bank approve all of Fisher's and McNatt's loan applications between January 1990 and December 1993. He stated no meeting was ever held to "kick out" or terminate loans to either McNatt or Fisher.

Gail Reese is the secretary of FirstBank's loan committee. She provided a detailed listing of approved loans and credit line increases to Fisher and McNatt from 1989 until 1994. She also stated that no meeting was held to "kick out" or terminate loans to either McNatt or Fisher.

Kelley's affidavit explains the events leading to First United's acquisition of First-Bank. According to Kelley, no offer was being discussed or considered when Yates purchased McNatt's stock in November 1992, and First United's acquisition offer had been rejected by FirstBank when Yates purchased Fisher's stock in June 1993. First United did not acquire FirstBank until July 28, 1994.

Fisher's and McNatt's answers to Yates's first set of interrogatories show that they did not have any direct knowledge of the relevant facts concerning the acquisition of First-Bank by First United and focus primarily on what Yates told Fisher.

The submitted summary judgment evidence supported summary judgment for Wyatt and Walker. Fisher and McNatt

were, therefore, required to respond by presenting controverting summary judgment evidence raising a material fact issue. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d at 678; *Christensen v. Sherwood Ins. Servs.*, 758 S.W.2d at 804.

The Fisher group failed to meet this burden. They submitted a response to the trial court accompanied by affidavits from Sam Fisher and McNatt. The two affidavits adopt the factual allegations set forth in the Fisher and McNatt's response to Wyatt and Walker's summary judgment motion.

■ To constitute proper summary judgment evidence, an affidavit must be made on personal knowledge, set forth facts which would be admissible in evidence, and show the affiant's competency. TEX.R. CIV. P. 166a(f); *Cuellar v. City of San Antonio*, 821 S.W.2d at 252; *Keenan v. Gibraltar Sav. Ass'n*, 754 S.W.2d 392, 394 (Tex.App.—Houston [14th Dist.] 1988, no writ). The allegations must be direct, unequivocal, and such that perjury is assignable. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984). Affidavits that merely adopt the factual allegations made in a response to a motion for summary judgment, such as those offered by Fisher, are not proper summary judgment evidence. *See, e.g., Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d at 544–45; *Lawrenson v. Global Marine, Inc.*, 869 S.W.2d at 522; *General Elec. Supply Co. v. Gulf Electroquip, Inc.*, 857 S.W.2d 591, 598 (Tex. App.—Houston [1st Dist.] 1993, no writ); *Webster v. Allstate Ins. Co.*, 833 S.W.2d 747, 749 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Law v. Law*, 792 S.W.2d 150, 151 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Fair Woman, Inc. v. Transland Management Corp.*, 766 S.W.2d 323 (Tex.App.— Dallas 1989, no writ); *Keenan v. Gibraltar Sav. Ass'n*, 754 S.W.2d at 394.

Fisher and McNatt failed to provide any summary judgment evidence that raises a material fact issue as to the claims against Wyatt and Walker. Consequently, summary judgment for Wyatt and Walker was proper.

For the reasons discussed, we affirm the summary judgment for Yates and FirstBank as to the conspiracy claims of Edith Fisher, Connie Matika, and Gale Fisher Huggins, and we affirm the summary judgment for Wyatt and Walker on all issues. The summary judgment for Yates and FirstBank on the fraud and conspiracy claims of Sam Fisher and McNatt is reversed, and those issues are remanded to the trial court for trial.

## OPINION ON REHEARING

■ In his motion for rehearing, Jim Yates contends that we should not rely on Fisher's and McNatt's answers to interrogatories as raising a fact issue because the interrogatory answers were not referenced in Fisher's and McNatt's summary judgment responses. The answers, however, were referred to in Yates' own motion as a part of his own summary judgment evidence. A nonmovant may rely on the summary judgment evidence referenced or set forth in the movant's own motion in order to raise a fact issue. *Sundance Oil Co. v. Aztec Pipe & Supply Co.*, 576 S.W.2d 780, 781 (Tex.1978); *Jordan v. Geigy Pharmaceuticals*, 848 S.W.2d 176 (Tex.App.-Fort Worth 1992, no writ); *Keever v. Hall & Northway Advertising, Inc.*, 727 S.W.2d 704, 706 (Tex.App.-Dallas 1987, no writ); *see* Tex.R.Civ.P. 166a(c).

Yates also contends that it is improper to rely on the Fisher and Yates answers because interrogatory answers may only be used against, not for, the person answering them.

■ We respectfully disagree with this contention in the context of this case. In ordinary circumstances, answers to interrogatories may only be used against the answering party. Tex.R.Civ.P. 168(2). But we believe that rule does not apply when the movant for summary judgment makes those answers a part of his own summary judgment evidence. In that situation, the movant, not the answering party, is the one "using" the answers, and he adopts those answers as a part of his own case. If the answers raise a fact issue and thereby defeat his motion, he is bound by the fact issue that his own motion raises. This is just an application of the well-settled rule that a party's own pleadings may disprove his case.

The summary judgment rule explicitly provides that "interrogatory answers referred or set forth in the *motion or response*" may be used to raise or negate a fact issue. If the rule meant to limit the use of interrogatory answers in summary judgment cases to use against the answering party only, the rule could have easily so stated. To disallow the use of evidence adopted by the movant in his own motion for summary judgment would violate the longstanding rule that evidence adopted and used by a party is admissible against that party. Now that we have abandoned the "voucher rule," such evidence is no longer binding on the party who uses it, but it may be used against him.

We recognize that in several cases courts have reached a different conclusion from that we reach. *Hanssen v. Our Redeemer Lutheran Church*, 938 S.W.2d 85, 95 (Tex.App.-Dallas 1996, writ denied) (opinion on rehearing); *Nebgen v. Minnesota Mining & Mfg. Co.*, 898 S.W.2d 363 (Tex.App.-San Antonio 1995, writ denied); *Dorsett Bros. Concrete Supply, Inc. v. Safeco Title Ins. Co.*, 880 S.W.2d 417 (Tex.App.-Houston [14th Dist.] 1993, writ denied). But those cases are based on cases where there is no indication that the interrogatory answers were made a part of the *movant's* summary judgment evidence. Thus, those cases do not support the holding in *Hanssen, Nebgen,* and *Dorsett.* The same is true of the other cases we have found that merely state the general rule.[9] We respectfully disagree with the holdings in those cases, and we conclude that summary judgment is improper when the movant's own summary judgment evidence shows that a fact issue is raised, even though some of that summary judgment evidence is in the form of the opposing parties' answers to interrogatories.

For the reasons stated, the motion for rehearing is overruled.

---

9. *See Barragan v. Mosler,* 872 S.W.2d 20 (Tex. App.-Corpus Christi 1994, no writ); *Elliott v. State,* 818 S.W.2d 71 (Tex.App.-San Antonio 1991, writ denied); *Worley v. Butler,* 809 S.W.2d 242 (Tex.App.-Corpus Christi 1990, no writ); *Keever v. Hall & Northway Advertising, Inc.,* 727 S.W.2d 704 (Tex.App.-Dallas 1987, no writ); *Walker v. Horine,* 695 S.W.2d 572 (Tex.App.-Corpus Christi 1985, no writ); *Thurman v. Frozen Food Express,* 600 S.W.2d 369 (Tex.Civ.App.-Dallas 1980, no writ); *Stanford v. Johnson,* 577 S.W.2d 791 (Tex.Civ.App.-Corpus Christi 1979, no writ); *Fort Bend Indep. Sch. Dist. v. Weiss,* 570 S.W.2d 241 (Tex.Civ.App.-Houston [1st Dist.] 1978, no writ); *Jeffrey v. Larry Plotnick Co.,* 532 S.W.2d 99 (Tex.Civ.App.-Dallas 1975, no writ); *Sprouse v. Texas Employers' Ins. Ass'n,* 459 S.W.2d 216 (Tex.Civ.App.-Beaumont 1970, writ ref'd n.r.e.).