**Jackie JORDAN, Appellant,**

v.

**GEIGY PHARMACEUTICALS and Geigy Pharmaceuticals, Division of Ciba–Geigy Corp., and Robert R. Dickey, M.D., Appellees.**

No. 2–92–012–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 8, 1992.

Rehearing Overruled March 31, 1993.

Timothy E. Kelley, A.P.C., Dallas, for appellant.

Strasburger & Price and James K. Peden, III, P.C., Sheree L. McCall, Dallas, for appellees Geigy Pharmaceuticals and Geigy Pharmaceuticals, Div. of Ciba–Geigy Corp.

Cantey & Hanger, L.L.P. and John F. Gray, Evelyn R. Leopold, Fort Worth, for appellee Robert R. Dickey, M.D.

Before FARRIS, MEYERS and DAY, JJ.

## OPINION

DAY, Justice.

Jackie Jordan (Jordan), plaintiff below, appeals from motions for summary judgment granted in favor of Geigy Pharmaceuticals and Geigy Pharmaceuticals, Division of Ciba–Geigy Corporation (Ciba) and Robert R. Dickey, M.D. (Dickey), defendants below, in a combined medical malpractice, product liability, and DTPA action.

We affirm in part and reverse in part.

In September 1988 Jordan sought treatment from Dickey for acute lower back pain. Dickey diagnosed Jordan's injury as a lumbar strain and prescribed a two-week supply of Voltaren. Voltaren is a nonsteroidal anti-inflammatory prescription drug, which is manufactured by Ciba. Shortly after Jordan began taking Voltaren, she became acutely ill and was hospitalized. Doctors at the hospital diagnosed Jordan as suffering from total kidney failure.

Jordan subsequently sued Ciba and Dickey, jointly and severally, on multiple theories. Jordan alleged that Dickey was negligent in prescribing Voltaren, in failing to advise Jordan that kidney failure could re-

sult from use of the drug, and in failing to monitor Jordan's reaction to Voltaren. She asserted that this alleged negligence caused her damages. Jordan sought recovery from Ciba on theories of strict liability and products liability for the manufacture and sale of a defective, unsafe, and dangerous drug and for breach of implied warranty of fitness for intended use. In addition, Jordan asserted that Ciba had violated the Texas Deceptive Trade Practices Act by negligently marketing the drug as safe and effective without warning of the possibility of dangerous side effects.

Dickey and Ciba filed separate motions for summary judgment pursuant to TEX. R.CIV.P. 166a. Jordan supported her response to the motions for summary judgment with affidavits by Saul Boyarsky, M.D. (Boyarsky) and her attorney, Timothy E. Kelley (Kelley). Both Dickey and Ciba objected to Boyarsky's affidavits.

The trial court sustained the objections to Boyarsky's affidavits and granted summary judgment in favor of both Dickey and Ciba. In three points of error, Jordan complains that the trial court improperly granted the summary judgments.

In a summary judgment case the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American Reserve Ins. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the nonmovant. *See id.* In deciding whether there is a material fact issue precluding summary judgment all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins.*, 480 S.W.2d 176, 178 (Tex.1972). Every rea-

sonable inference from the evidence must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Montgomery*, 669 S.W.2d at 311. Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great American*, 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of his cause of action or defense as a matter of law. *City of Houston*, 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence demonstrates, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975). To accomplish this objective, the defendant, as movant, must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *Garza v. Levin*, 769 S.W.2d 644, 645 (Tex.App.—Corpus Christi 1989, writ denied); *Pinckley v. Gallegos*, 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied).

Because Jordan sued Dickey and Ciba on different theories, we will address separately whether the trial court properly granted the summary judgments.

## DICKEY'S MOTION FOR SUMMARY JUDGMENT

In his motion for summary judgment, Dickey contended that he did not breach the standard of care he owed to Jordan. Dickey also asserted that there was no causal connection between his prescribing Voltaren for Jordan and her kidney failure.

Ordinarily, we would be required to decide whether Dickey, as defendant-movant, conclusively negated either of these elements of Jordan's cause of action against

him. *James v. Brown*, 637 S.W.2d 914, 918 (Tex.1982); *Rosas*, 518 S.W.2d at 537. Jordan does not dispute the sufficiency of Dickey's summary judgment proof, however, and thus we need not address it, either.

In contrast, Dickey *did* object to Jordan's summary judgment proof on both standard of care and causation, and the trial court sustained Dickey's objections. We must therefore consider whether Jordan's summary judgment proof was admissible and whether it controverted Dickey's evidence, thereby establishing the existence of a genuine issue of material fact. *Garza*, 769 S.W.2d at 645; *Pinckley*, 740 S.W.2d at 531.

In his affidavit in support of his motion for summary judgment, Dickey testified as to the standard of care in 1988 applicable to prescribing drugs similar to Voltaren, providing patients information about such drugs, and monitoring patients during use of the drugs. According to Dickey, the prescription should be consistent with the usage and dosage indicated in information available to the physician at the time, including information given in the package insert and information then generally available to the medical community. Additionally, the physician must provide the patient with information about the risks and hazards of which the physician is aware, sufficient to influence a reasonable person in deciding whether to give or withhold consent to the prescription. Dickey also testified that the physician is not required to monitor the effects of nonsteroidal, anti-inflammatory drugs, including effects on the patient's kidney function, during a two-week therapy, unless the physician knows of physical conditions peculiar to the patient that could predispose the patient to potentially debilitating or life-threatening consequences as a result of taking the drug.

Dickey testified that he prescribed for Jordan a two-week supply of 50–milligram Voltaren, to be taken twice daily after meals, based on the package insert and other medical literature available to him. Dickey further testified that, in anticipation of the two-week therapy period, he did not advise Jordan that the prescribed dosage of Voltaren could cause acute, irreversible renal failure. Dickey asserted that he did not violate the care owed to Jordan in failing to give such advice because neither Ciba nor the medical literature available to him at the time of the prescription indicated that use of Voltaren, as prescribed, could cause irreversible cortical necrosis. Finally, Dickey testified that he did not monitor the Voltaren therapy because Jordan's physical condition did not indicate the necessity for monitoring during the two-week period.

In an attempt to controvert Dickey's summary judgment evidence, Jordan attached Boyarsky's affidavits to her response to motion for summary judgment. In his affidavits Boyarsky stated:

> I am familiar with the standard of care in 1988 applicable to the renal hazards of non-steroidal anti-inflammatory drugs such as Voltaren, it's [sic] use and consequences, adverse reactions and side effects.... Insofar as the conduct of Dr. Dickey is concerned, the unsupervised use of a newly released non-steroidal anti-inflammatory drug for two to three weeks without renal monitoring *can be criticized* insofar as the standard of care is concerned because the risk and mechanism of acute renal failure for the class of drug were already known to the medical profession and literature. Informed consent doctrine and practice requires that all benefits and material risks for each therapeutic option (including no therapy) be reviewed with patients so that they can make the therapeutic decision for themselves.... [Emphasis supplied.]

We are unable to ascertain whether Boyarsky's testimony is an attempt to show that Dickey breached the standard of care he set forth in his own affidavit or an attempt to show that Dickey breached some different standard of care that Boyarsky measured him against. In either case, Boyarsky's affidavits are not competent summary judgment evidence against Dickey because they are only conclusionary. Mere general statements and opinions by

an expert are insufficient to controvert a movant's properly presented affidavit. *Duncan v. Horning,* 587 S.W.2d 471, 474 (Tex.Civ.App.—Dallas 1979, no writ).

Boyarsky's affidavit is conclusionary because the package insert and PHYSICIAN'S DESK REFERENCE (PDR) on record fail to recommend renal monitoring for short-term therapy. If Boyarsky relied on other medical literature in forming his opinion, copies of these documents should have been attached to his original or supplemental affidavits or otherwise identified as being in the record in sworn or certified form. TEX. R.CIV.P. 166a(f). *See Perkins v. Crittenden,* 462 S.W.2d 565, 567 (Tex.1970); *Faour v. Koenig,* 662 S.W.2d 751, 751 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Armstrong v. Rice,* 556 S.W.2d 620, 622 (Tex.Civ.App.—Texarkana 1977) (papers referred to in affidavit in support of summary judgment must "be attached thereto or served therewith"), *writ dism'd,* 616 S.W.2d 415 (Tex.1981).

Boyarsky's testimony regarding what the informed consent doctrine and practice require is likewise a mere conclusion because it, too, is unsupported by any evidence.[1] As Dickey pointed out in his objections, Boyarsky made only vague and indefinite references to evidence not before

the court at the summary judgment proceeding and thus did not provide the proper predicate for his opinion.[2] *See Perkins,* 462 S.W.2d at 567–68 (affidavits that do not meet Rule 166a requirements are not entitled to evidentiary consideration). We therefore find that Boyarsky's affidavits, as they pertain to Dickey, are not competent summary judgment evidence because they state mere conclusions and fail to meet the requirements of TEX.R.CIV.P. 166a(f).

Because Jordan failed to meet Dickey's summary judgment proof with competent controverting evidence, we overrule Jordan's second point of error and her third point of error as it pertains to Dickey.

## CIBA'S MOTION FOR SUMMARY JUDGMENT

■ In its motion for summary judgment and other documents in evidence at the summary judgment proceeding, Ciba, as defendant-movant, attempted to negate an element of each of Jordan's causes of action against Ciba. Jordan does not question the sufficiency of Ciba's summary judgment proof, so we will not address it here.

1. Notably, Dickey testified in his affidavit that the very hazards Jordan complains Dickey failed to warn her of—acute, irreversible renal failure, or irreversible cortical necrosis—were unknown to him at the time he prescribed Voltaren for Jordan. Jordan herself concedes as much in her brief on appeal. In her brief Jordan quotes from Dickey's affidavit, in which Dickey testified in part: "Plainly stated, I could not warn or advise Jackie Jordan of a risk of which I was not aware and which was not made known in the medical community at the time...." Jordan then uses this statement to show how Ciba's warnings were inadequate when she says "[T]he manufacturer did not give the warnings and the doctor even to the day that he sign[ed] his Affidavit *was not aware of the fact that Voltaren could ... cause cortical necrosis* to Jackie Jordan...." [Emphasis supplied.]

2. Although her argument is inartfully drafted, Jordan seems to assert on appeal that the Texas Rules of Civil Evidence do not require an expert to testify to all the information upon which he has relied for his conclusions, in order to give an expert opinion. TEX.R.CIV.EVID. 705 provides:

    The expert may testify in terms of opinion or inference and give his reasons therefor

without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data.

*Id.*

    Jordan also contends that Boyarsky clearly stated the facts and data upon which he gave his opinion. As we have previously noted, the portions of Boyarsky's affidavits that pertain to Dickey do not state facts, but mere conclusions, and any data on which Boyarsky purported to rely is either inapplicable or not in evidence.

    Additionally, in his objections to Jordan's response to motion for summary judgment, which are as close to cross-examination as possible in a summary judgment proceeding, Dickey objected to Boyarsky's original affidavit as containing vague and indefinite references not before the court. Even when allowed to supplement his affidavit, Boyarsky failed to provide any of the additional data upon which it was allegedly based. We therefore find this argument by Jordan unpersuasive.

Jordan supported her response to Ciba's motion for summary judgment with affidavits by Boyarsky and Kelley. Jordan complains that the trial court improperly granted Ciba's motion to strike Boyarsky's affidavits. Ciba objected to Boyarsky's original affidavit because, among other things, it failed to state that it was made on personal knowledge, as required by TEX. R.CIV.P. 166a(f).

■ An affidavit must state that the facts alleged in the affidavit are within the affiant's personal knowledge. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); TEX.R.CIV.P. 166a(f). In addition, the affidavit must show how the affiant became familiar with these facts. *Fair Woman, Inc. v. Transland Management,* 766 S.W.2d 323, 323 (Tex.App.—Dallas 1989, no writ); *Ramirez v. Gordon's Jewelry Co.,* 763 S.W.2d 34, 37 (Tex.App.—Corpus Christi 1988, no writ).

Jordan filed a supplemental affidavit in which Boyarsky testified that the facts in the affidavit were within his personal knowledge. Additionally, both the original and supplemental affidavits showed that Boyarsky acquired knowledge of the facts by familiarizing himself with Jordan's medical records, Dickey's May 23, 1991 deposition, the PDR, and the package insert that accompanied Voltaren in 1988.

■ Ciba also objected to the Boyarsky affidavits on the basis that Boyarsky referred to documents that were not attached to the affidavit, allegedly in contravention of Rule 166a(f). We find this argument to be without merit. Boyarsky testified that he had examined Jordan's medical records, Dickey's deposition of May 23, 1991, and the PDR, and inferred that he had also relied on the 1988 package insert for Voltaren in forming his opinion. It was unnecessary for Jordan to attach copies of these documents to Boyarsky's affidavits because the documents were already in evidence.[3] A nonmovant may use a movant's exhibit to establish the existence of a fact

question. *Keever v. Hall & Northway Advertising, Inc.,* 727 S.W.2d 704, 706 (Tex. App.—Dallas 1987, no writ) (movant's exhibit can create a fact question); TEX. R.CIV.P. 166a(c). Ciba points us to no cases that hold otherwise.

Because Boyarsky based his opinions concerning Ciba on personal knowledge and on documents that were in evidence and thus before the court at the summary judgment proceeding, we find that the trial court erred in granting Ciba's motion to strike Boyarsky's affidavits. Jordan's first point of error is sustained.

■ We must now consider whether Boyarsky's affidavits establish the existence of a genuine issue of material fact. In her pleadings Jordan alleged, among other things, that Ciba negligently failed to warn physicians and others "of the dangers of acute kidney failure as a result of the use of" Voltaren.

Ciba asserted in its motion for summary judgment that it satisfied its duty to adequately warn of the hazards associated with Voltaren by warning Dickey through the package insert that accompanied the drug. In addition, Ciba contended that, because Dickey prescribed Voltaren with knowledge of the drug's attendant risks, the adequacy of Ciba's warning was not a *producing cause* of Jordan's injury. Boyarsky testified to the contrary in his affidavits, stating that the 1988 package insert and PDR "were not suitably modified to inform physicians ... against the risk of acute renal failure...."

The portion of the package insert in the record on appeal warns:

As a class, nonsteroidal anti-inflammatory drugs have been associated with renal papillary necrosis and other abnormal renal pathology in *long-term* administration to animals....

[In certain patients] administration of a nonsteroidal anti-inflammatory drug results in ... a reduction of renal blood

---

**3.** Copies of the PDR and part of the package insert were attached to Ciba's brief in support of its motion for summary judgment. A copy of Dickey's deposition is attached to Ciba's motion for summary judgment. Copies of part of Jordan's medical records were attached to Dickey's affidavit in support of his motion for summary judgment.

flow, which may precipitate over⁺ renal failure. Patients at greatest risk of this reaction are those with impaired renal function, heart failure, liver dysfunction, those taking diuretics, and the elderly. *Discontinuation of nonsteroidal anti-inflammatory drug therapy is typically followed by recovery to the pretreatment state.* [Emphasis supplied.]

Cases of significant renal failure in patients receiving Voltaren have been reported from postmarketing experience, but were not observed in over 4,000 patients in controlled clinical trials.... It is not yet clear whether this low incidence of renal impairment in clinical trials, plus the observation of less renal toxicity than is usual in rodents, will translate into a significant reduction of the risk of renal failure in susceptible patients in widespread use.

At his deposition Dickey testified that the medical press warned that impairment of renal function was one side effect of Voltaren. Dickey also testified that he had familiarized himself with the package insert accompanying Voltaren before prescribing the drug for Jordan. Dickey could not identify the document provided him at the deposition, however, and testified that he could only assume from its date that it would have been the package insert available at the time he prescribed Voltaren for Jordan. Dickey also testified that he could only assume that the package insert for Voltaren gave the same warnings about the possibility of renal toxicity or renal problems as did inserts for other nonsteroidal drugs. Moreover, as we have previously noted, Dickey testified in his affidavit in support of his motion for summary judgment that neither Ciba nor the medical literature available to him at the time he prescribed Voltaren for Jordan advised of the possibility that Voltaren could cause irreversible cortical necrosis.

Certainly, Ciba's summary judgment evidence shows that it warned of some of the dangers attendant to Voltaren. The record

does not indicate, however, that Ciba warned of the possibility of irreversible renal failure, or even of acute renal failure.[4] We therefore find that a genuine issue of material fact exists as to whether Ciba's warnings about the dangers associated with Voltaren were adequate.

Because Boyarsky's affidavits controvert Ciba's summary judgment evidence on the adequacy of the warnings regarding the use of Voltaren, we sustain Jordan's third point of error as it relates to Ciba. We deem it unnecessary to consider whether Kelley's affidavit establishes the existence of a fact issue.

We affirm the trial court's granting of Dickey's motion for summary judgment. We reverse the trial court's granting of summary judgment in favor of Ciba and remand the cause for a trial on the merits.

Jordan and Ciba shall each pay one-half of the cost of this appeal.

---

**4.** Ciba asserts that it warned of acute renal failure in the package insert. Although this assertion may be true, the portion of the package insert before us on appeal does not contain such a warning. We therefore cannot consider that possibility in our review of the trial court's decision.