**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 16 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GILBERT YBARRA and MICHAEL
BOWNDS,

      Plaintiffs-Appellants,

v.

AMOCO PRODUCTION COMPANY,

      Defendant-Appellee.

No. 98-2189
(D.C. No. CIV-96-838-LH)
(D. N.M.)

---

**ORDER AND JUDGMENT** [*]

---

Before **PORFILIO** , **McKAY** , and **LUCERO** , Circuit Judges.

---

Plaintiffs Gilbert Ybarra and Michael Bownds appeal from the district

court's grant of summary judgment in favor of defendant Amoco Production

Company on their claim for negligent failure to warn relating to their exposure to

the chemical Selexol while working at an Amoco facility. [1] Reviewing the district

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

(continued...)

court's decision de novo under the same standards it applied, *see Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir. 1995), we conclude there is a factual dispute regarding the adequacy of Amoco's warnings and reverse.

Amoco operates a carbon dioxide recovery plant near Sundown, Texas, and hired Hydroblast Corporation in June 1994 to pressure test the tubes in its heat exchanger system to determine the presence of and locate any leaks in the system. Selexol is a chemical solvent used in the heat exchangers to maximize carbon dioxide recovery. Plaintiffs, Hydroblast employees, were part of a crew sent to the plant to do the testing with air pressure. During the testing, Selexol was blown from the tubes, drenching plaintiffs and allegedly causing their injuries. In June 1996, plaintiffs brought this diversity action against Amoco and Union Carbide Corporation, the manufacturer of Selexol, raising strict liability and negligence claims involving the design, manufacture and sale of the chemical, and a negligence claim for failure to adequately warn of the danger posed by the chemical. Subsequently, plaintiffs and Union Carbide settled, and plaintiffs dropped their claims involving the design, manufacture and sale of Selexol.

Amoco moved for summary judgment on the remaining failure-to-warn claim, which the district court granted. Applying Texas law, the court concluded

_____

[1](...continued)
therefore ordered submitted without oral argument.

-2-

that the claim was governed by the principles applicable to the respective responsibilities of an owner or occupier of land and an independent contractor employed to do work on the premises. Quoting *Delhi-Taylor Oil Corp. v. Henry*, 416 S.W.2d 390, 394 (Tex. 1967), the court noted the general principle that

> [w]hile an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees.

Appellant's App. at 142. The court then held that Amoco had provided adequate warnings to Tom Miller, the owner and manager of Hydroblast, regarding the danger posed by Selexol, and thus was relieved from the further burden of warning plaintiffs directly.

Plaintiffs raise three arguments on appeal. First, they contend that by preventing Hydroblast from cleaning the tubes before testing them, which they claim is Hydroblast's normal procedure, Amoco assumed control of at least part of the operations and thus altered the duty of care it owed plaintiffs. *See, e.g.*, *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). Second, they contend that because an Amoco employee at the plant assured the Hydroblast crew before they began the testing that there was nothing in the tubes that could hurt them, Amoco's warnings as a whole were inadequate. Third, they contend that certain regulations promulgated by the Occupational Health and Safety Administration

-3-

(OSHA) should be imposed to expand the duty owed plaintiffs by Amoco. We address only the second argument on the merits. [2]

Plaintiffs do not challenge the district court's finding that Amoco adequately warned Hydroblast's Miller of the dangers associated with the Selexol system at the Amoco facility. Instead, they contend there is a factual dispute regarding whether these warnings were invalidated or modified by statements made by an Amoco employee to Randy Hinds, Hydroblast's crew foreman, when the crew arrived at the facility to begin the testing. [3]

According to Hinds, when the crew got to the site, he told an unidentified Amoco employee that ordinarily they "lanced" the tubes before testing them, a process by which they cleaned out any debris and chemicals that may be in the tubes. He asked the employee whether Amoco wanted them to lance the tubes,

---

[2] In its response brief, Amoco contended that plaintiffs failed to raise their first argument in the district court and that we therefore should not consider it on appeal. In their reply brief, plaintiffs did not respond to this argument, nor have they ever identified where in the record they raised this argument, as required by 10th Cir. R. 28.2(c)(2) (formerly Rule 28.2(b)), and from our review of the record, it does not appear that they did raise it below. We leave to the district court whether plaintiffs may assert this argument on remand, should they wish to.

As to plaintiffs' third argument, it is so perfunctorily presented that we will not address it. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994); *National Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1244 (10th Cir. 1989).

[3] Although at the summary judgment hearing, the district court questioned the parties concerning the effect of the employee's statement, it did not address this issue in ruling in Amoco's favor.

which would be an additional cost over the pressure testing, and the employee told him no. He then asked whether there was anything in the tubes that could harm them, which he said he would always ask of employees at the various facilities at which Hydroblast worked, and the employee again replied no. On the basis of this response, Hinds decided not to require the crew to wear "slicker suits," protective coveralls designed to keep any harmful chemicals from coming in contact with the wearer's skin. The crew proceeded with the testing wearing only face or eye protection, and the testing somehow resulted in Selexol being blown out of the tubes and drenching three of the Hydroblast crew members, including plaintiffs. Plaintiffs contend that the statement by the facility employee, that there was nothing in the tubes that could harm the Hydroblast crew, essentially negated or amended the more formal warnings Amoco had given to Miller, thus raising a factual dispute regarding the adequacy of the warnings. *See Jordan v. Geigy Pharmaceuticals*, 848 S.W.2d 176, 182 (Tex. Ct. App. 1992) (adequacy of warning is question of fact).

In response, Amoco first contends that because plaintiffs "cite no legal authority for the proposition that a comment such as the one at issue can invalidate all previous warnings provided to a contract employer," we should not consider this argument on appeal. Appellee's Br. at 15. We do not agree that plaintiffs needed to cite legal authority to support the commonsense principle that

-5-

warnings are not inviolable and may be altered or modified by subsequent actions. There may be questions about the validity or effect of this alleged modification of Amoco's earlier warnings, such as whether the facility employee had the authority to amend the earlier warnings or whether Hinds' reliance on his statement was reasonable, but these are questions neither Amoco nor the district court has addressed.

Amoco primarily argues that the employee's statement is irrelevant because it did not proximately cause plaintiffs' alleged injuries. *See, e.g.* , *Doe v. Boys Clubs of Greater Dallas, Inc.* , 907 S.W.2d 472, 477 (Tex. 1995) (proof of proximate causation includes showing that "act or omission was a substantial factor in bringing about injury, without which the harm would not have occurred") (quotation omitted). [4] It frames the dispute at this point as, what caused Hydroblast's crew foreman Hinds not to require the crew to wear the slicker suits. [5] (Plaintiffs do not dispute Amoco's contention, supported by expert testimony, that wearing slicker suits or washing the chemical off their bodies soon after being exposed to it would have prevented their injuries.) Amoco contends

---

[4]    Although Amoco raised the issue of proximate causation in the district court, the court did not specifically address it in its ruling.

[5]    Plaintiffs also contend that plaintiff Bownds testified that he would have worn a slicker suit if not for the Amoco employee's statement, but the record does not support this contention. The causation inquiry thus focuses solely on what caused Hinds not to require the crew to wear the protective suit.

that notwithstanding the statement by the facility employee, Hinds would have required his crew to wear slicker suits if he had been advised, as he is deemed to have been advised under Texas law, of the warnings Amoco gave to Miller.

Hinds testified in his deposition that he had neither been warned of the dangers of Selexol nor even heard of the chemical prior to the accident. He stated that he knew at the time of the employee's statement that the best sources of information regarding the potential dangers of Selexol were Miller and the applicable material safety data sheet containing warnings regarding Selexol, but he simply did not think about seeking additional information. He also testified that had he known of the dangers associated with the use of Selexol, he would have required the crew to wear the protective slicker suits. *See* Appellants' App. at 70, 104. [6]

---

[6] The material safety data sheet for Selexol, which had been provided to Miller, described precautions to be taken in handling the chemical, stated that it causes skin irritation, and warned that users should avoid contact with skin and clothing and wash thoroughly after handling. As to the warnings regarding Selexol, Hinds testified as follows:

> Q. Am I correct that one way by which you can avoid contact with your skin and clothing is to wear a slicker suit?
>
> A. Right.
>
> Q. And I gather that if you had read or been informed of these warnings before you worked on the Selexol exchanger that you would have seen to it that your men would have worn a slicker

(continued...)

This evidence does not prove, however, that the statement by the facility

employee was immaterial for summary judgment purposes, as Amoco contends.

Its proximate cause argument suffers from the same frailty as its earlier argument-

_____

[6](...continued)
          suit?

     A.     Yes, sir.

     Q.     You, yourself, would have worn a slicker suit as well?

     A.     Yes, sir.

*Id.* at 104.

     Q.     Page 4-13 of Exhibit 4, there is a longer explanation of the
            Selexol solvent system?

     A.     Yes, sir.

     Q.     And the next page it tells you what the hazards are and as to
            this particular system, the hazards are flammability, pressure,
            temperature, toxicity, electrical shock, rotating equipment and
            chemical burns.  Is that correct?

     A.     Yes, sir.


     Q.     If you had seen or if Mr. Miller had told you what was in this
            Exhibit 4, it [sic] you had been told that the hazards in there
            involved toxicity and chemical burns, would you have done
            anything differently out at the Amoco plant in June of '94?

     A.     Yes.  I would have made them wear their slicker suits.

*Id.* at 70.

-the presumption that its formal warnings to Miller and could not be affected by subsequent actions. Hinds did not say--or more accurately, speculate about--what he would have done had he been aware of the dangers of Selexol, but then been told by an Amoco employee at the facility at the time they were to begin testing that there was nothing in the tubes that could harm them. Amoco thus has not met its burden of showing that there are no factual disputes regarding what proximately caused plaintiffs' injuries.

Viewing the facts in plaintiffs' favor, the employee's statement may be considered to have modified the prior, more formal warnings Amoco gave to Miller, and thus creates a factual dispute regarding the adequacy of Amoco's warnings. Because of the existence of this factual dispute, the district court erred in granting summary judgment in favor of Amoco. Accordingly, the judgment is VACATED and the case is REMANDED for further proceedings.

Entered for the Court

Carlos F. Lucero
Circuit Judge