**Opinion issued November 19, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00243-CV

————————————

**THE DISCOVERY GROUP, INCORPORATED
D/B/A PREFERRED CORPORATE HOUSING, Appellant
V.**

**RICHARD KAMMEN, INDIVIDUALLY
AND D/B/A RICHARD KAMMEN & ASSOCIATES, Appellees**

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Case No. 1029597**

## MEMORANDUM OPINION

This landlord-tenant case arises from the lease of an apartment by appellant,

The Discovery Group Incorporated, Inc. d/b/a Preferred Corporate Housing

["PCH"], as landlord, to Richard Kammen, individually, and d/b/a Richard Kammen & Associates, as tenant. PCH sued Kammen, asserting a breach of contract cause of action, alleging that Kammen failed to pay the last three months' rent due under the lease. Kammen counterclaimed, alleging among other things that the suit was time barred and that PCH failed to mitigate its damages. Kammen also claimed that he was entitled to reasonable attorney fees for defending the suit. Kammen filed a motion for summary judgment, based on his statute of limitations affirmative defense. The trial court granted summary judgment in Kammen's favor, ruling that PCH takes nothing on their claim and awarding Kammen attorney's fees. On appeal, PCH brings four issues challenging the trial court's summary judgment. We affirm in part and reverse and remand in part.

## BACKGROUND

Kammen, an Indiana resident, entered into an agreement with PCH, a Texas corporation, to lease an apartment from December 30, 2008 to May 31, 2009. The terms contemplated rental of the premises for use as a temporary residence while Kammen was in trial in Tennessee, where the apartment is located. Rent was to be paid monthly, at a rate of $3,345.00, and was due on or before the first of each month. The lease provides the following provision regarding lease extensions and move-out procedures:

> Lessee(s) is responsible for the rent for the full Term and is responsible for the rent through the notice period. In the event that

Lessee(s) need to terminate the Lease before the expiration of the Term, Lessee(s) may pay an 85% reletting fee of the monthly rent to cover PCH's expenses in attempt to release the Apartment. The reletting charge is not a cancellation fee and does not release Lessee(s) from the obligations under this Lease. The reletting charge does not release you from your continued liability for: future or past-due-rents; charges for damages; or other sums due. Lessee(s) move out notice cannot terminate the Lease prior to the end of the Term or renewal period.

Kammen failed to pay rent for the months of March, April, and May of 2009. On April 11, 2012, PCH, through its agent, sent Kammen a demand letter whereby PCH states that "[w]e are responsible for the remaining 3 months to fulfill the term through 5/31/09 with the property, therefore we have to pass the cost that we incurred from the property to break the lease." The letter seeks "the full cancellation cost" of breaking the lease and attaches an invoice. The Invoice further identifies the costs from March 1, 2009 through May 31, 2009 as "cancellation costs."

PCH filed suit March 28, 2013. Kammen filed his First Amended Motion for Summary Judgment, alleging that PCH's suit was time barred. He also contended that the tolling provisions relied on by PCH in its petition were inapplicable, and that he was entitled to attorney's fees. The trial judge sustained Kammen's objections to the evidence attached to PCH's response and struck Exhibits 1-A, 1-B, 1-C, and 1-D as not being properly authenticated and as inadmissible hearsay. The judge also struck sections of PCH's affidavit. The trial judge granted

3

Kammen's motion for summary judgment based on the affirmative defense that the claim was barred as it was outside the statute of limitations.

## STATUTE OF LIMITATIONS

PCH complains in its first issue that the trial court erred by granting summary judgment on the basis of limitations. Kammen contends, both in his summary judgment and on appeal, that the limitations period began to run on March 1, 2009—the date that the first months' rent went unpaid. PCH argues that Kammen breached the contract each time rent was due, but not paid, i.e., on March 1, April 1, and May 1 of 2009. Although PCH concedes the suit was "arguably" outside the statute of limitations for the breach on March 1, 2009, but argues that the April 1 and May 1 breaches were timely. And, as to the March 1, 2009 breach, PCH pleaded both statutory and equitable tolling.

### *Standard of Review*

This is an appeal from a summary judgment. The standards for reviewing a motion for summary judgment are well established. Rule 166a provides a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine fact issue. *See Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex. 1972). The party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Wornick Co. v. Casas*,

4

856 S.W.2d 732, 733 (Tex. 1993); *Nixon v. Mr. Property Mgt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex. 1996). The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense. *See Oram v. General Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex. 1974); *Swilley*, 488 S.W.2d at 67–68. The trial court may not grant summary judgment by default because the nonmovant did not respond to the summary judgment motion when the movant's summary judgment proof is legally insufficient. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The movant must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *City of Houston*, 589 S.W.2d at 678.

When, as here, a defendant moves for summary judgment on the affirmative defense of limitations it has the burden to conclusively establish that defense. *See Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997). When summary judgment is sought on limitations, it is also the movant's burden to negate the applicability of a tolling or suspension statute raised by the nonmovant. *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975); *Medina v. Tate*, 438

5

S.W.3d 583, 586 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A trial court's ruling on a summary judgment motion is reviewed de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Summary judgments must stand on their own merits. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Wornick*, 856 S.W.2d at 733. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See Science Spectrum*, 941 S.W.2d at 911; *Friendswood Dev.*, 926 S.W.2d at 282; *Wornick*, 856 S.W.2d at 733; *Nixon*, 690 S.W.2d at 548–49. On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548. The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

*Analysis*

An agreement to lease an apartment is a contract, and a breach thereof falls within the four-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann. § 16.004. Rule 166a(c) clearly requires that Kammen, as the moving party, has the

burden to establish that no material fact issue exists regarding the statute of limitations and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c).

For breach of a contract requiring fixed, periodic payments, Texas law is clear that a separate cause of action arises for each missed payment. *See Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) ("[I]f the terms of an agreement call for periodic payments during the course of the contract, a cause of action for such payments may arise at the end of each period, before the contract is completed."). Thus, a suit for the breach of a contract requiring payment in periodic installments may include all payments due within the four-year statute of limitations period, even if the initial breach was beyond the limitations period. *F.D. Stella Prods. Co. v. Scott*, 875 S.W.2d 462, 465 (Tex. App.—Austin 1994, no writ). Recovery of any payments due before the four-year limit is barred, since a suit on each individual payment more than four years overdue would also be barred. *See Hollander v. Capon*, 853 S.W.2d 723, 726–27 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *see also Gardner v. Cummings*, 14-04-01074-CV, 2006 WL 2403299, at *2 (Tex. App.— Houston [14th Dist.] Aug. 22, 2006, pet. denied) (mem. op.) (stating that when installment contract calls for fixed, periodic payments, separate cause of action accrues for each missed payment). Leases, unless terminated after an anticipatory

breach, are treated as installment contracts for the purposes of the accrual of a cause of action and the running of the applicable statute of limitations. *See F.D. Stella Prods.*, 875 S.W.2d at 465–466.

While both parties agree that the four-year limitations period applies and that the law regarding installment contracts applies generally to leases, they disagree as to when the cause of action accrued in this case. Essentially, Kammen contends that the lease terminated, and the remainder of the payments were accelerated as of the date of the first breach on March 1, 2009, thereby making PCH's suit over four years after that date untimely. PCH, on the other hand, contends that the lease did not terminate, and that even if suit on the March 1 default was untimely, suit on the April 1 and May 1 defaults was not. Thus, the issue this Court must resolve is whether Kammen carried his summary judgment burden to prove when his cause of action accrued.

A cause of action generally accrues, and statute of limitations begins to run, when facts come into existence that authorize a claimant to seek judicial remedy. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998). If a lessee abandons a leased premises before the expiration of the primary term of a lease, the abandonment does not necessarily terminate the lessor's rights under the lease. Instead, the lessor may either (1) treat the lessee's conduct as an anticipatory breach of the contract, consider the contract to be

8

terminated, and hold the lessee for damages or (2) disregard the abandonment, keep the contract alive, and sue for the rent that accrues thereafter. *Resolution Trust Corp. v. Cramer*, 6 F.3d 1102, 1108 (5th Cir. 1993) (citing *Speedee Mart, Inc. v. Stovall*, 664 S.W.2d 174, 177 (Tex. App.—Amarillo 1983, no writ)); *Stubbs v. Stuart*, 469 S.W.2d 311, 312 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ). That is, the landlord has the option of treating a missed rent payment as a breach terminating the entire lease or keeping the lease alive and suing for rents as they accrue thereafter. *Stubbs*, 469 S.W.2d at 312.[1]

This law provides the crux of the parties' dispute. If PCH exercised the first option, and treated the March 1, 2009 failure to make payment as an anticipatory breach of the entire lease, which it then terminated, Kammen argues that limitations would run from the date of the first breach. However, PCH contends that, if it exercised the second option to "stand on the lease" and keep it in effect, the installment nature of the contract would mean that limitations began to run for each default on the date payment was not made. Thus, PCH argues that, while suit for the March 1, 2009 default may be untimely, the suit for the remaining defaults was not.

---

[1]     Under either option, the landlord has a statutory duty to mitigate damages, which, if done successfully, necessarily terminates the contract. *See* TEX. PROP. CODE ANN. § 91.006 (West 2015). There is no issue of mitigation before us in this appeal.

There is a question of fact regarding which option PCH chose to exercise after Kammen's March 1, 2009 default. On March 11, 2012, PCH sent Kammen a fax that provided:

> I received your letter in regards to outstanding invoice 3090555 in the amount of $9287.99. I have the email in which you gave a 30 day notice to vacate, which would put a vacate date of 3/1/09, but the contract that you signed was for the lease term of 12/30/08–5/31/09. We are responsible for the remaining 3 months to fulfill the term through 5/31/09 with the property, therefore we have to pass the cost that we incurred for the property to break the lease. We have been trying to collect this since 2009 and the full cancellation cost is still due.

Attached to PCA's fax was an invoice to Kammen dated March 10, 2009, with a due date of March 1, 2009, that requested payment for "Cancellation Costs as of 3/1/09–5/31/09" in the amount of $9,287.99, plus "Accumulated late fees applied as of 4/4/2009" in the amount of $952.02. Kammen argued in his amended motion for summary judgment that "[PCA] elected to terminate the lease at issue and sue for the alleged 'cancellation costs' as set forth in the attached Exhibit A. By [PCA's] own admission, all sums were due and owing on March 2009, which [PCA] refers to as the 'vacate date.'" PCA responds that the use of the term "cancellation costs" in its fax and invoice is, at best, a fact question regarding its intent.

We begin by noting that as early as March 10, 2009, PCH was demanding payment of more than the $3,345.00 that constituted the missed March 1, 2009

10

payment, and that the amount it demanded was referred to as "Cancellation Costs." This is some evidence that PCH considered the lease terminated as of the date of its March 10, 2009 invoice.

However, the amount of the invoice for "cancellation costs" in the amount of $9,287.99 is less than the amount that PCH would be entitled to in rent if it were demanding payment of the entire lease amount at that time. The "cancellation costs" are not explained or broken down into how much is attributable to each months' breach. Further, the lease provides that PCH can charge a reletting fee of 85% of the monthly rent in the event that the lessee moves out early, and that such reletting fees "does not release you from your continued liability for future or past-due rents." While the amount claimed in PCH's invoice is also not equal to the 85% of rents that a reletting fee would be, and the contract provides that a reletting fee is not a "cancellation fee," this clause of the contract is some evidence that the parties contemplated fees for moving out early that were not necessarily just monthly rents. As such, the assessment of such fees would not necessarily be a termination of the contract.

Also, there is no other evidence suggesting that PCH intended to terminate the lease such as reentering and taking possession of the property or reletting it. And, if PCH intended to terminate the lease after the first breach, it could have

immediately filed suit, which it did not, waiting instead until after the entire term of the lease expired.

As such, Kammen did not conclusively establish that PCH elected to treat the lease as terminated upon the first default or at any time before March 1, 2009. At trial, the fact-finder should decide the definition of "cancellation costs" as used in the supporting documentation, as well as examine evidence regarding actions taken by both parties after the missed payments in determining whether PCH intended to terminate the lease or "stand on the lease" after Kammen's March 1, 2009 breach.

Because there is a fact question regarding when PCH's cause of action arose, the trial court erred in granting summary judgment on Kammen's affirmative defense as to the April 1 and May 1, 2009 breaches. *See Meineke Disc. Muffler Shops, Inc. v. Coldwell Banker Prop. Mgmt. Co.*, 635 S.W.2d 135, 138 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (holding summary judgment improper when fact question existed as to whether lessor chose to terminate lease or to keep contract alive).

### *Equitable Tolling*

Regarding the March 1, 2009 breach, PCH pleaded that it was not untimely because of equitable tolling. In a trial on the merits, the party asserting a tolling defense bears the burden of proof. *See Woods v. Williams M. Mercer, Inc.*, 769

S.W.2d 515, 518 (Tex. 1988). On summary judgment, however, the movant has the burden of conclusively negating any relevant tolling doctrines the plaintiff asserts in the trial court. *See Diaz v. Westphal*, 941 S.W.2d 96, 97 (Tex. 1997). Thus, we must decide whether Kammen conclusively negated equitable tolling.

PCH asserts that Kammen acknowledged the existing debt, thus impliedly promised to pay the debt. Consequently, PCH contends, because the suit was filed within four years of the written acknowledgement, the trial court erred in granting Kammen's motion for summary judgment.

An acknowledgment of the justness of a claim that appears to be barred by limitations is not admissible in evidence to defeat the law of limitations if made after the time that the claim is due unless the acknowledgment is in writing and is signed by the party to be charged. TEX. CIV. PRAC. & REM. CODE ANN. § 16.065 (West 2015). Texas courts have consistently interpreted this statute to require "that an agreement: 1) be in writing and signed by the party to be charged; 2) contain an unequivocal acknowledgment of the justness or the existence of the particular obligation; and 3) refer to the obligation and express a willingness to honor that obligation." *Stine v. Stewart*, 80 S.W.3d 586, 591 (Tex. 2002). Furthermore, the amount of the obligation the acknowledgment describes must be readily ascertainable. *Id.* at 592–93. Whether a writing sufficiently acknowledges a debt is a question of law. *Bright & Co. v. Holbein Family Mineral Trust*, 995 S.W.2d 742,

13

745 (Tex. App.—San Antonio 1999, pet. denied); *Medal, L.P. v. Kvaerner Process Sys. US, Inc.*, No. 14-03-01334-CV, 2004 WL 1192894, at *1 (Tex. App.—Houston [14th Dist.] June 1, 2004, no pet.) (mem. op.).

In support of his motion for summary judgment, Kammen attached four pieces of correspondence[2] between himself or his attorney and PCH:

> 1.      May 2, 2012 email from Kammen to PCH.  In this email, Kammen notes that he has no records from "the case with which these costs were incurred," because of the passage of nearly four years.  The email does not mention any amount of costs.

> 2.      May 8, 2012 email from Kammen to PCH.  In this email, Kammen states that he "simply can't agree to 8200.00[.]"  He speculates that a jury would not award that much and that he made it clear that the lease could end in less than 6 months.  He also speculated about whether PCH had taken the necessary steps to mitigate its damages.

> 3.      August 8, 2012 email from Kammen to PCH.  In this email, Kammen stated that "[i]n order to resolve this, really to avoid the hassle, I am prepared to pay $7000 in two payments of 3500 each."  He again questions PCH's efforts to mitigate its damages and states that he would "rethink" his position "if there really were efforts to mitigate damages that were unsuccessful."

---

[2]      The same four letters were also attached as exhibits to PCH's Response to the Motion for Summary Judgment, and were struck by the trial court as being improperly authenticated.  In issue two, PCH contends the trial court erred by striking the letters.  However, we need not reach this issue because a nonmovant may use a movant's exhibit to establish the existence of a fact question. *Jordan v. Geigy Pharms.*, 848 S.W.2d 176, 181 (Tex. App.—Fort Worth 1992, no pet.); *Keever v. Hall & Northway Advertising, Inc.*, 727 S.W.2d 704, 706 (Tex. App.—Dallas 1987, no writ) (movant's exhibit can create a fact question).  Because the letters were properly before the trial court as part of Kammen's summary judgment proof, PCH could also rely on them.

14

4. November 5, 2013 letter from Kammen's attorney to PCH. In this letter counsel explained that Kammen told PCH that the lease had to be terminable at will in case the legal case he was working on at the time got "blown up or continued." Counsel asserted that PCH was aware of this possibility and "stated that this was understood and that they would re-lease the apartment." Counsel complained that Kammen did not receive a demand for payment until "sometime in the middle of 2012," and that he requested proof of mitigation efforts that was never provided. Counsel concluded by stating, "My counsel understands that your client is owed something."

Kammen argues that these letters, relied upon by PCH to establish equitable tolling, are not an unqualified acknowledgment of an existing debt as a matter of law. The letters between Kammen and PCH do not meet elements (2) or (3) of the criteria for acknowledging and reaffirming a debt set forth in *Stine v. Stewart*, 80 S.W.3d at 591. Kammen never expressly refers to the actual amount alleged to be owed, nor expresses a desire or intent to honor the debt owed, the past-due three months' rent. Rather, Kammen expresses a willingness to settle the issue out of court to "resolve the hassle." Furthermore, the amount owed is not readily ascertainable as is required by law. In fact, there are various numbers included in the letters, and, thus, merely by looking at the letters, it would be impossible to conclude which was the correct amount of the obligation.

Thus, we conclude that Kammen carried his burden to conclusively negate equitable tolling as to PCH's claims based on the March 1, 2009 breach.

15

### Statutory Tolling

Regarding the March 1, 2009 breach, PCH also pleaded that it was not untimely because of statutory tolling. Again, at trial, the plaintiff has the burden to prove tolling, *see Woods*, 769 S.W.2d at 518, but on summary judgment a defendant must conclusively negate a pleaded tolling doctrine. *See Diaz*, 941 S.W.2d at 97.

Here, PCH pleaded that limitations as to the March 1, 2009 breach was statutorily tolled by section 16.063, which provides:

> The absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence.

TEX. CIV. PRAC. & REM. CODE § 16.063 (West 2015).

In *Kerlin v. Sauceda*, 263 S.W.3d 920 (Tex. 2008), the supreme court held that a nonresident defendant who had contracted in Texas was nonetheless deemed "present by doing business in this state" as defined by the Texas longarm statute, despite his physically being absent from the state. *Id.* at 927–28. Accordingly, the court concluded that section 16.063 did not apply. *Id.* at 928.

Similarly, in *Ashley v. Hawkins*, 293 S.W.3d 175 (Tex. 2009), the court held that a nonresident involved in a car wreck in Texas was not considered absent from the state for purposes of tolling because he could be served both through TEX. CIV. PRAC. & REM. CODE ANN. § 17.062 (West 2015) (providing service on Chairman of

16

Transportation Commission as agent for nonresident involved in vehicle accident in state) and through TEX. CIV. PRAC. & REM. CODE ANN. § 17.044 (West 2015) (providing "longarm" service on Secretary of State for nonresidents doing business in the state). 293 S.W.3d at 179–82. In so holding, the court stated:

> Therefore, we . . . hold, as we did in *Kerlin*, that a defendant is "present" in Texas, for purposes of the tolling statute, if he or she is amenable to service under the general longarm statute, as long as the defendant has "contacts with the state sufficient to afford personal jurisdiction."

*Id.* at 179. Here, Kammen, a resident of Indiana, was amenable to service under the Texas longarm statute as he was conducting business in Houston, Texas. PCH concedes that

> [t]he lease contract was entered into in Houston, Texas and the lease specifically designates jurisdiction and venue to be in Houston, Texas. The contract was performable . . . in Houston, Texas. The contract was performed . . . in Houston, Texas by making partial payments to the Plaintiff in Houston, Texas.

Because Kammen was subject to the Texas longarm statute, he was also "present" in Texas for purposes of the tolling statute, thus the tolling provision does not apply.

### *Conclusion*

Because Kammen proved conclusively that the tolling provisions pleaded by PCH do not apply, the trial court did not err by granting summary judgment as to the March 1, 2009 breach of the lease. However, because there is a question of

fact regarding the accrual date of the April 1 and May 1 claims, the trial court erred in granting Kammen's summary judgment as to those claims. Accordingly, we reverse the summary judgment as to PCH's claims relating to the April 1 and May 1, 2009 rental payments, and remand those claims for further proceedings. We affirm the summary judgment as to PCH's claim regarding the March 1, 2009 rental payment.

## EVIDENTIARY DECISIONS

In its next two issues, PCH contends the trial court erred when striking PCH's's exhibits 1-A, 1-B, 1-C, and 1-D as well as striking PCH's Affidavit, paragraphs 4, 5, 6, 7, 8 and 10. The trial judge struck Plaintiff's Exhibits 1-A, 1-B, 1-C, and 1-D as being "improperly authenticated" and "inadmissible hearsay." The trial judge failed to provide specific reasons for striking PCH's Affidavit, paragraphs 4, 5, 6, 7, 8, and 10.

As noted in footnote 4 above, PCH's's exhibits 1-A, 1-B, 1-C, and 1-D are the same as Exhibit D attached to Kammen's Amended Motion for Summary Judgment. As such, even if the trial court erroneously struck them as improperly authenticated by PCH, they were already before the trial court as part of Kammen's evidence, and PCH could and did rely on them. *See Jordan*, 848 S.W.2d at 181.

18

The trial judge also sustained objections by Kammen to several paragraphs of an affidavit provided by an employee of PCH, specifically paragraphs 4, 5, 6, 7, 8 and 10. We note that paragraphs 4, 5, 6, 7, and 8 of the affidavit are all statements regarding whether the lease terminated or was maintained after Kammen's nonpayment on March 1, 2009. Because we have already reversed and remanded the claims that these paragraphs of PCH's affidavit address, we need not address the issue of whether the trial court erroneously struck them, and decline to do so. *See* TEX. R. APP. P. 47.1.

And, although paragraph 10 of the affidavit addresses the issue of statutory estoppel by providing evidence that Kammen was absent from Texas for over one year between 2010 and 2013, we have held that statutory estoppel does not apply here because Kammen is a nonresident an subject to service via the longarm statute. Thus, evidence of his absence from the state is irrelevant and error, if any, in striking this portion of the affidavit is harmless.

Accordingly, we overrule issues two and three.

### ATTORNEY'S FEES

The contract between the parties allows for the prevailing party to be awarded attorney's fees. PCH contends in its fourth issue that the trial court erred by awarding attorney fees to Kammen as the "prevailing party." Because we have reversed a portion of Kammen's summary judgment and remanded for further

19

proceedings, he is no longer a prevailing party. *See Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 749 (Tex. App.—Fort Worth 2005, no pet.) (holding that because appellate court reversed and remanded for further proceedings, neither party had prevailed at that point). As such, we reverse the award of attorney's fees and remand the issue to the trial court.

## CONCLUSION

The trial court's summary judgment relating to the unpaid rent for the months of April and May, 2009 is reversed and remanded for further proceedings. Likewise, the award of attorney's fees to Kammen is reversed and remanded. The remaining portions of the summary judgment as they relate to unpaid rent for March, 2009 are affirmed.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.