Opinion filed November 8, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed November 8,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00069-CV 

                                                    __________

 

                                      CARL BURLESON, Appellant

                                                             V.

                     SHARP
IMAGE ENERGY, INC. AND WEST TEXAS

                               ENERGY
SERVICES, L.L.C.,  Appellees

 



 

                                         On
Appeal from the 118th District Court

                                                        Howard
County, Texas

                                                   Trial
Court Cause No. 43,737

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

Carl
Burleson filed a personal injury suit against Sharp Image Energy, Inc.
and West Texas Energy Services, L.L.C.  The trial court granted
separate motions for summary judgment filed by Sharp and by West Texas.  We
affirm.








Before
we get to the merits of this case, we must discuss a point of concern.  Okon 
J. Usoro, an attorney from Houston, represented appellant at trial and in this
court.  Mr. Usoro complained in his original brief that the trial court had a
conflict of interest in the case.  Mr. Usoro further made the claim that the
trial court failed to disclose this conflict of interest and that it failed to
voluntarily recuse itself.  Therefore, reasons Mr. Usoro, there was a
reasonable doubt as to the trial court=s
impartiality.  Mr. Usoro alleges that the trial court=s conduct resulted in a violation of  ACanon 4(4) [sic] of the
Code of Judicial Conduct.@ 
It is Canon 4(A)[1] that Mr.
Usoro actually quotes, and it contains this language:

A
judge shall conduct all of the judge=s
extra-judicial activities so that they do not:

 

(1)
cast reasonable doubt on the judge=s
capacity to act impartially as a judge; or

 

(2)
interfere with the proper performance of judicial duties.

 

Mr.
Usoro correctly states that appellees were tenants in a building owned by the
trial court.  In his original brief, it is Mr. Usoro=s claim that the trial court Afailed to recuse himself,
and failed to inform the lawyers of his financial interest with the Appellees,
so that the lawyers, in particular Appellant=s
lawyer, could either file a Motion to Recuse or continue the case with [the
trial court]  as the presiding judge.@ 
It was rightfully claimed in a motion in response to Burleson=s initial brief that the
recusal claims made in that brief were contrary to the truth and that a
reporter=s record from
a hearing on Burleson=s
motion to transfer would bring that falsehood to light.  Burleson, through Mr.
Usoro, filed a late response to the motion.  His response was to object to the
filing of the previously unfiled reporter=s
record.  We ordered that the record be filed.

The
gap between Mr. Usoro=s
claim and the reality of the record cannot be bridged.  The record, to the
filing of which Mr. Usoro objected, reveals that the following statements were
made by the trial court to the attorneys, including Mr. Usoro, in a preliminary
hearing on a motion to transfer venue:

[THE
COURT]:  Well, here=s
the situation.  So, I guess, you and Mr. Usoro certainly need to know it.  And,
apparently, Mr. Morgan has been down this path with me one time before.

 








I
have a certain relationship with Sharp Image Energy and West Texas Energy, and
the nature of that relationship is as follows:  I own a building north of town
here.  It=s a
commercial type building.  And they lease it from me.  They don=t pay near enough rent, so
it=s not like, you
know, I have the upper hand on it.  They=ve
been there for three or four years.  Basically, they don=t really do much to the building.  They B I don=t even know why they
continue leasing it.  They perform no functions there, that I know of, other
than storing stuff.  But if they=re
happy to continue leasing it, it=s
fine with me.

 

They=re tenants.  There are not
any problems.  We never had any problems one way or the other.  If they abandon
the building, I can lease it for more than what they=re renting it for, you know.  And I guess,
frankly staying in a lawsuit like this, the only detriment to me is I couldn=t very well raise the rent
on them during the pendency or something like that for fear that somebody would
say, AWell, they
voluntarily paid me more rent.@

 

The
rent is $300 a month.  It=s
been that for about four years.  And I anticipate it will stay there until one
of the two of us decide it=s
no longer satisfactory.  That=s
the extent of it.

 

I
don=t have any B I know Mike Evans.  I know
Vince Hatfield. And to say I know them, I know who they are.  If I see them on
the street, I=ll speak
to them.  I=ve never
been in either of their homes.  We=ve
never socialized together.  We have no business interest.  I have no financial
interest in any of their investments, oil properties.  I never made an
investment in anything like B
I=m telling you the
nature and extent of that relationship; and, that is, I own that building on
the Snyder highway, and they are the tenants.

 

I
have told plaintiffs and defendants that in the past.  In the past, it has
never bothered Mr. Morgan.  It=s
never bothered any other plaintiff, but I=m
not going to go any further without divulging and disclosing the nature of that
relationship.

 

You
are now on notice, Mr. Usoro.  You know, you need to B yes, sir?

 

MR.
LOCKE:  Sharp Image has no problem with that, Your Honor.  No objection.

 

THE
COURT:  Well, it=s
probably not fair, Mr. Usoro, to just say, AWell,
what about you?@  I
mean, you know, you just found [out] about it just now.  So I=ll not put you on the spot
and say, AWhat do you
want to do?@  But you
do need to be thinking about that.

 

. .
. .

 

. .
.  I guess I can hold off ruling on that [the motion to transfer venue] until
you tell me whether or not you=re
willing for me to stay in the case or whether or not you wish me to get out.

 








MR.
USORO:  Yes, sir.  Well, I guess the issue, Judge, is if you do retain venue here,
will you be willing to recuse yourself from the case?

 

THE
COURT:  Oh, I=m
probably not going to be unwilling if the  request [is made] that I do so.  If
somebody says, AWe want
you to recuse yourself,@
I probably will do it.

 

. .
. .

 

THE
COURT:  After mediation, if it looks like it=s
going to proceed to trial, you need to make an election as to whether or not
you=re willing for me
to stay in the case or whether or not you wish me to indicate your wish to
recuse myself.

 

MR.
USORO:  Yes, sir.

 

THE
COURT:  In which event, I=ve
indicated I probably will do that.

 

. .
. .

 

THE
COURT:  We=ll see
after [the mediation] whether or not it looks like the trial is inevitable. 
And if so, you need to make your election about me staying on the case or not.

 

MR.USORO: 
Yes, sir.

 

Mr. Usoro never filed a motion to recuse the trial
court. 

At
the beginning of the oral arguments, in an effort to allow Mr. Usoro to bridge
the gap between his statement and the reality of the record, we asked him to
explain to us how he could make such a claim regarding the trial court in the
face of the stark record before us.  Mr. Usoro maintained that it was a
mistake, one made in the throes of pressure surrounding completion of a brief
within the time limits.

We
suggested to Mr. Usoro that in light of the record in contrast to his claim at
the very least he should apologize to the trial court for making such a claim
in a public arena; he agreed.  Mr. Usoro also asked that he be given an
opportunity to file an amended brief in order that he might remove that
language from his brief.  We allowed him that opportunity.








This
court subsequently received a copy of a letter that Mr. Usoro sent to the trial
court.  In his  letter, Mr. Usoro apologizes to the trial court and admits his
mistake.  However, he makes the claim in that letter that he brought the
problem to the attention of this court.  To the contrary and because we were
concerned about the integrity behind the claim in comparison to the record,
this court brought the matter to Mr. Usoro=s
attention.

Mr.
Usoro filed an amended brief, and he deleted his claim that the trial court
failed to disclose its relationship with appellees.  However, he continued to
assert his claim that the trial court failed to voluntarily recuse itself from
this case.  Mr. Usoro acknowledges that he never asked the trial court to
recuse itself, even though the trial court issued that invitation to him. 

It
is the repeated misrepresentation of the record and the false impression
thereby cast upon the trial court that is troublesome to this court. 
Nevertheless, the allegations were that of appellant=s attorney, not those of appellant.  Normally,
a party is bound by the actions of that party=s
lawyer, but in fairness we will consider the merits of this appeal.

West
Texas and Sharp were involved in drilling an oil well in Dawson County. 
Burleson was working at the drilling site on August 13, 2000, when Jose Franco
intentionally struck him in the head with a wrench.  Burleson received workers= compensation benefits as a
result of his injuries.  On August 13, 2004, Burleson filed suit against Sharp
and West Texas.  Burleson amended his petition on September 19, 2005, and
alleged numerous causes of action including negligent hiring, fraud, negligent
misrepresentation, and assault.  In the motions for summary judgment filed by
West Texas and by Sharp, both argue that Burleson=s
claims were barred by both the statute of limitations and by the exclusivity
provisions of the Texas Workers=
Compensation Act.  The trial court granted both motions, and Burleson filed
this appeal.








At
the beginning of oral argument, we asked the parties to address whether we had
jurisdiction.  Both parties addressed that question during argument and have
briefed the issue.  Texas appellate courts have jurisdiction only over final
judgments.  Cherokee Water Co. v. Ross, 698 S.W.2d 363, 365 (Tex.
1985).  There can be only one final judgment.  Tex. R. Civ. P. 301.  A judgment is final for purposes of
appellate jurisdiction if it disposes of all issues and parties in a case and
no further action is required to determine the controversy.  Houston Health
Clubs, Inc. v. First Court of Appeals, 722 S.W.2d 692, 693 (Tex. 1986);  North
East Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 895 (Tex. 1966).  If a
summary judgment order appears to be final and disposes of all claims or parties,
the judgment should be treated as final for purposes of appeal.  Inglish v.
Union State Bank, 945 S.W.2d 810, 810‑11 (Tex. 1997); Mafrige v.
Ross, 866 S.W.2d 590, 592 (Tex. 1993); Fisher v. Yates, 953 S.W.2d
370, 374 (Tex. App.CTexarkana
1997), writ den=d,
988 S.W.2d 730 (Tex. 1998).

There
are two judgments in this case.  The trial court entered an order titled AFinal Judgment@ on February 24, 2006, in
which it granted West Texas=s
motion for summary judgment.  In the judgment, the trial court stated that all
relief Anot expressly
granted is denied.@ 
On the same day, the trial court entered an order titled AFinal Judgment and Order
Granting Summary Judgment.@ 
In that order, the trial court granted Sharp=s
motion for summary judgment and dismissed Burleson=s claims.  The order further states:  AThis Final Judgment and
Order of the Court disposes of all claims and causes of action asserted by
[Burleson] . . . is appealable and shall be the Final Judgment and Order of the
Court.@

It
is not necessary that all parties and issues be disposed of in a single
document.   Mafrige, 866 S.W.2d at 591 n.5.; Fisher, 953 S.W.2d
at 375.  Where an interlocutory order is entered disposing of one defendant,
that order becomes final and there is a final judgment when a subsequent order
is entered disposing of the remaining defendants.  H. B. Zachry Co. v.
Thibodeaux, 364 S.W.2d 192, 193 (Tex. 1963).  In the present case, the two
orders were entered on the same day without reference to which was the Asubsequent@ order.  The orders do not
reference each other but collectively dispose of all parties and all issues and
merge to form a final appealable judgment.  See Webb v. Jorns, 488
S.W.2d 407, 408 (Tex. 1972); Fisher, 953 S.W.2d at 375.  This court has
jurisdiction in this appeal.

As
we have stated, Burleson complains in his first issue that the trial court
erred when it did not recuse itself.  There was no motion for recusal filed. 
Burleson waived his right to complain about recusal when he failed to file a
motion to recuse.  Tex. R. Civ. P.
18a, 18b; Beard v. Beard, 49 S.W.3d 40, 51 (Tex. App.CWaco 2001, pet. denied); Wright
v. Wright, 867 S.W.2d 807, 811 (Tex. App.CEl
Paso 1993, writ denied).  Burleson=s
first issue on appeal is overruled.








In
his second issue on appeal, Burleson claims that the trial court erred when it
did not rule on a motion to transfer venue.  Burleson is the one who selected
venue in Howard County.  He did not first nonsuit this case and then refile in
another county.  See Geochem Tech Corp. v. Verseckes, 962 S.W.2d 541
(Tex. 1998).  Further, Burleson failed to get a ruling from the trial court and
has, therefore, waived any error.  He had the burden to obtain a ruling
regarding venue.  See Tex. R.
Civ. P. 87(1);  Carlile v. RLS Legal Solutions, Inc., 138 S.W.3d
403, 408 (Tex. App.CHouston
[14 Dist.] 2004, no pet.).  The second issue on appeal is overruled.

In
his third issue on appeal, Burleson argues that the trial court erred when it
denied his motion for leave to file late responses to the motions for summary
judgment.  We review a trial court=s
ruling on a motion for leave to file a late response to the motions for summary
judgment for an abuse of discretion.  Carpenter v. Cimarron Hydrocarbons
Corp., 98 S.W.3d 682, 686 (Tex. 2002).  A trial court abuses its discretion
when it acts without reference to any guiding rules or principles.  Carpenter,
98 S.W.3d at 687;  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241‑42 (Tex.1985).  A trial court should grant a motion for leave to file
a late response to a summary judgment when a litigant establishes good cause
for failing to timely respond by showing that (1) the failure to respond was
not intentional or the result of conscious indifference but, rather, was the
result of accident or mistake and (2) the late response will occasion no undue
delay or otherwise injure the party seeking summary judgment.  Carpenter,
98 S.W.3d at 688.

Sharp
filed its motion for summary judgment on December 9, 2005.  West Texas filed
its motion for summary judgment on December 14, 2005.  The motions were
scheduled for hearing on February 1, 2006.  At Burleson=s attorney=s
request, the hearing was rescheduled to February 14, 2006, so that the attorney
could attend an interview in an immigration case in which he was the attorney. 
Burleson=s responses
were due February 7, 2006.  In his motion for leave to file late responses,
Burleson=s attorney
stated that he planned to Aput
finishing touches to the responses@
on February 6 and forward the responses by overnight courier.  Burleson=s attorney told the trial
court that he became ill on February 6, the day before the responses were
due, and that, therefore, he could not work on the responses as planned. 
Nevertheless, on February 7 the attorney prepared a motion for extension of
time within which to file late responses to the motions for summary judgment. 
The motion was placed in the hands of a courier and was filed by the clerk of
the trial court on February 8.  Burleson=s
attorney attached a letter from a medical clinic in which someone from the
clinic excused him from work from February 6 to February 8.








Burleson=s motion for leave to file
late responses shows that his counsel became ill the day before the responses
were due.  The motions for summary judgment were filed December 9 and December
14.  Burleson had ample time within which to prepare responses but waited until
the day they were due to ask for an extension.  Burleson did not meet his
burden to show that his failure to respond was not intentional or the result of
conscious indifference but, rather, was the result of accident or mistake and that
allowing the late responses would not cause undue delay or otherwise injure
Sharp and West Texas.  We cannot say that the trial court abused its discretion
when it denied Burleson=s
motion for leave to file late responses to the motions for summary judgment. 
Burleson=s third issue
on appeal is overruled.  

 In
his fourth issue on appeal, Burleson argues that summary judgment was improper
if based upon the statute of limitations.   In the appeal from a summary
judgment case, we determine whether the movant met its summary judgment burden
by establishing that no genuine issue of material fact exists and that the
movant is entitled to judgment as a matter of law.   Tex. R. Civ. P. 166a(c);  KPMG Peat Marwick v. Harrison
County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999); City of
Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979). 
We accept as true all evidence that supports the nonmovant, indulge every reasonable
inference in favor of the nonmovant, and resolve any doubts in favor of the
nonmovant.   Rule 166a(c); Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420,
425 (Tex. 1997).  To be entitled to summary judgment on an affirmative defense
such as limitations, the movant must conclusively prove all of the elements of
the defense.   Univ. of Houston v. Clark, 38 S.W.3d 578, 580 (Tex.
2000).  The trial court specifically stated in its judgment for Sharp Energy
that the claims asserted by Burleson Aare
barred, as a matter of law.@ 
In its summary judgment for West Texas, the trial court found that the motion Ais in all respects granted.@  When a trial court does
not state the reasons for its ruling, the judgment will be upheld upon any
theory alleged in the motion.  Harwell v. State Farm Mut. Auto. Ins. Co.,
896 S.W.2d 170, 173 (Tex. 1995).

Burleson
was injured on August 13, 2000, when he was struck on the head with a wrench. 
He filed suit against Sharp on August 13, 2004.  Tex. Civ. Prac. & Rem. Code Ann. ' 16.003(a) (Vernon Supp. 2006) contains a
provision that a person must bring suit for personal injury not later than two
years after the day the cause of action accrues.  Burleson attempts to avoid
the effects of the statute of limitations by contending that the statute was
tolled due to fraudulent concealment.  








Accrual
of a cause of action is deferred in two types of cases:  (1) those involving
fraud or fraudulent concealment and (2) those where the injury is Ainherently undiscoverable@ and is Aobjectively verified.@  S.V. v. R.V., 933
S.W.2d 1, 6 (Tex. 1996); Computer Assocs. Int=l, Inc. v. Altai, Inc., 918 S.W.2d 453,
456 (Tex. 1996).  The Texas Supreme Court has said that the commission of fraud
or fraudulent concealment works to estop a defendant from asserting limitations
as a defense because Aa
person cannot be permitted to avoid liability for his actions by deceitfully
concealing wrongdoing until limitations has run.@ 
S.V., 933 S.W.2d at 6; Slusser v. Union Bankers Ins. Co., 72
S.W.3d 713, 719  (Tex. App.CEastland
2002, no pet.). Fraudulent concealment tolls the statute of limitations until
the injured party, using reasonable diligence, discovered or should have
discovered the injury.  KPMG Peat Marwick, 988 S.W.2d at 750.

The
elements of fraudulent concealment are (1) the existence of the underlying
tort; (2) the defendant=s
knowledge of the tort; (3) the defendant=s
use of deception to conceal the tort; and (4) the plaintiff=s reasonable reliance on
the deception.  Glover v. Union Pac. R.R. Co., 187 S.W.3d 201, 217 (Tex.
App.CTexarkana 2006,
pet. denied); Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 430, 439
(Tex.  App.CFort Worth
1997, pet. denied).  Fraudulent concealment requires actual knowledge by the
defendant that a wrong has occurred and Aa
fixed purpose to conceal the facts necessary for the plaintiff to know that it
has a cause of action.@ 
Vial v. Gas Solutions, Ltd., 187 S.W.3d 220, 230-31  (Tex. App.CTexarkana 2006, no pet.); Santanna Natural Gas Corp. & Women=s Natural Gas Corp. v.
Hamon Operating Co., 954 S.W.2d 885, 890 (Tex. App.CAustin 1997, pet. denied).

Burleson
contends that Sharp and West Texas concealed the underlying tort of negligent
hiring.  Burleson specifically argues that  Sharp and West Texas shared
employees and management personnel and that by doing so Acreated a web of deception that confused their
employees as to who their correct employer was.@ 
Burleson further states that he signed documents indicating he was employed by
West Texas but that he performed services for Sharp; he drove trucks with the
Sharp logo.   Burleson contends that West Texas and Sharp concealed the fact
that he was employed by Sharp and that the employee who struck him, Franco, was
employed by West Texas thereby preventing him from filing suit against West
Texas.








Burleson=s complaints do not show
fraudulent concealment on the part of Sharp or West Texas.  Burleson=s confusion as to who his
employer was does not show that Sharp or West Texas concealed the existence of
any underlying tort of negligent hiring. 

Moreover,
a party asserting fraudulent concealment as an affirmative defense to the
statute of limitations has the burden to raise it in response to the summary
judgment motion and to come forward with summary judgment evidence raising a
fact issue on each element of the fraudulent concealment defense.  KPMG Peat
Marwick, 988 S.W.2d at 748.  There is no summary judgment proof of
fraudulent concealment.  Burleson=s
fourth issue on appeal is overruled.

In
a related issue, his fifth, Burleson argues that the trial court erred if it
held against him on the statute of limitations issue because it found that he
failed to use due diligence in serving Sharp and West Texas.  The four-year
statute of limitations does not apply to these claims.  Sharp was not served
until November 17, 2004.  The record does not indicate that West Texas was
served. Even if the four-year statute of limitations applied to Burleson=s claims, he has not shown
that he exercised due diligence in serving Sharp and West Texas.  See Murray
v. San Jacinto Agency, Inc., 800 S.W.2d 826, 830 (Tex. 1990).  Burleson=s fifth issue on appeal is
overruled.

In
his sixth and seventh issues on appeal, Burleson argues that the trial court
erred in granting summary judgment if summary judgment was based upon the
exclusivity provision of the Texas Workers=
Compensation Act.  In their motions for summary judgment, Sharp and West Texas
stated that the exclusivity provision of Tex.
Lab. Code Ann. '
408.001(a) (Vernon 2006) barred Burleson from filing suit against them. 
Section 408.001(a) contains the following language:

Recovery
of workers=
compensation benefits is the exclusive remedy of an employee covered by workers= compensation insurance
coverage or a legal beneficiary against the employer or an agent or employee of
the employer for the death of or a work-related injury sustained by the
employee.

 








In
his original petition, Burleson stated that he was an employee of West Texas
and that Franco was an employee of Sharp.  In his amended petition, Burleson
stated that he was an employee of Sharp and that Franco was an employee of West
Texas.  On appeal, Burleson contends that the two companies are alter egos and
create confusion as to whom his actual employer was.  Burleson argues that,
because the companies shared employees, vehicles, management, and were so Aintertwined,@ the exclusivity provision
of Section 408.001(a) is not applicable.

Burleson
signed documents indicating that he was employed by West Texas.  Pursuant to a
written contract, West Texas, as subcontractor, was in the process of drilling
a well in Dawson County on behalf of Sharp, general contractor.  Sharp provided
workers= compensation
insurance to West Texas as its subcontractor.  See Tex. Lab. Code Ann. ' 406.123(a) (Vernon 2006). 
Burleson received workers=
compensation benefits.  If the trial court based its summary judgment on the
exclusivity provisions of the Labor Code, it did not err.  Burleson=s sixth and seventh issues
on appeal are overruled.  

In
his eighth and final issue on appeal, Burleson argues that West Texas is liable
for the intentional acts of Franco.  Burleson first contends that, pursuant to
the doctrine of vicarious liability, West Texas is liable for the acts of
Franco.  Burleson does not cite any authority in support of his argument.  See
Tex. R. App. P. 38.1(h). 
Burleson also argues that West Texas and Sharp were negligent in hiring 
Franco.  Burleson cites Tex. Lab. Code
Ann. '
417.001(a) (Vernon 2006), which states:

 An
employee or legal beneficiary may seek damages from a third party who is or
becomes liable to pay damages for an injury or death that is compensable under
this subtitle and may also pursue a claim for workers= compensation benefits under this subtitle.

 

Neither Section
417.001(a) nor the summary judgment evidence supports Burleson=s argument.  Burleson=s eighth issue on appeal is
overruled.  

All
of Burleson=s
arguments on appeal have been considered, and all are overruled.

The
judgment of the trial court is affirmed.

 

JIM R. WRIGHT

November 8, 2007                                                                   CHIEF
JUSTICE

Panel consists of:  Wright, C.J.,

Strange, J., and Hill, J.[2]









[1]Tex. Code Jud. Conduct, Canon 4(A), reprinted in Tex. Gov=t Code Ann., tit. 2, subtit. G app. B (Vernon 2005).





[2]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.